## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 24 2013

JAMES W. McCORMACK, CLERK
By: _____
                    DEP CLERK

HERSHALL MORSE AND
ROBIN MORSE, Individually
and as Husband and Wife                                          **PLAINTIFFS**

VS                              NO. 4:13cv0249 BSM

UNITED STATES OF AMERICA                                    **DEFENDANT**

### COMPLAINT

This case assigned to District Judge _Miller_
a to Magistrate Judge _Kearney_

Come now the plaintiffs, Hershall Morse and Robin Morse, individually and as husband and wife, by and through their attorneys, Callis L. Childs, P.A. and Michael L. Lipscomb.  For their Complaint against the defendant, United States of America, they state as follows:

### I.  THE PARTIES, JURISDICTION AND VENUE

1.      Plaintiffs, Hershall Morse and Robin Morse, were at all times pertinent hereto residents of Beebe, Arkansas, which is located within the Eastern District of Arkansas.

2.      Defendant, United States of America, (hereinafter "defendant USA") by and through its several departments, at all times pertinent hereto, has owned, operated, managed, staffed, controlled, and acted through the United States Department of Veteran Affairs, which provides health care to veterans at John L. McClellan Memorial Veterans Hospital of Little Rock, Arkansas (hereinafter "VAMC Little Rock").

3.     The VAMC Little Rock is located within the Eastern District of Arkansas.

4.     The United States Department of Veteran Affairs is a Federal agency as defined under the Federal Tort Claim Act (hereinafter "FTCA"), 28 U.S.C. Section 2671, et seq.

5.     Pursuant to the FTCA, defendant USA, is liable in tort for the acts and omissions of its employees, agents and servants who provide services at the VAMC Little Rock.

6.     Plaintiff, Hershall Morse,  is an honorably discharged veteran of the United States Marine Corps, and was and is entitled to receive medical care and treatment at Department of Veterans Affairs (hereinafter "DVA"), medical facilities, including VAMC Little Rock.

7.     VAMC Little Rock, through its agents, servants and employees, had a duty to use ordinary care to determine the mental and physical condition of plaintiff, Hershall Morse, and to furnish him the care and attention reasonably required by his mental and physical condition.  (AMI 1504)

8.     VAMC Little Rock provided negligent medical care and treatment to plaintiff, Hershall Morse, which negligence was its failure to provide physicians who possessed and applied, with reasonable care, the degree of skill and learning ordinarily possessed and used by members of their profession in good standing in the same type of service or specialty in the locality in which they practice.  (AMI 1501)

9.     The acts and omissions which give rise to this action occurred in Little Rock, Arkansas, which lies within the Eastern District of Arkansas.

10.     The plaintiffs reside in Beebe, AR, which lies within the Eastern District of Arkansas.

11.     Therefore, venue is proper pursuant to 28. U.S.C Section 1402(b).

12.     Pursuant to the FTCA, 28 U.S.C. Section 1346(b)(1) and the FTCA, this Court has jurisdiction in this matter.

13.     On or about May 2, 2011, plaintiff, Hershall Morse, made and provided an Administrative Tort Claim in writing to the defendant, USA, through it's agency, the (hereinafter "DVA"), Office of the Regional Counsel, 2200 Fort Roots Drive, North Little Rock, AR 72114, through attorney Callis L. Childs, P.A.  A copy of the Administrative Tort Claim is attached hereto as "Exhibit 1" and is incorporated herein by reference.

14.     Pursuant thereto, plaintiffs gave timely written notice of plaintiffs' Administrative Tort Claim to the defendant, USA, within two (2) years after the claim arose as required by 28 U.S.C. Section 2401.

15.     The defendant through its agency, the DVA, has finally denied the Administrative Tort Claims of the plaintiff in a letter dated November 6, 2012.  A copy of the DVA's denial is attached hereto as "Exhibit 2" and is incorporated herein by reference.

## II.  THE CLAIMS

Plaintiff adopts and incorporates by reference the allegations of Paragraphs 1 through 15 above, and further alleges as follows:

16.     At all times material to this action, the individuals whose conduct is at issue were agents and employees of defendant USA and were acting within the course and scope of their employment.

17.     Plaintiff, Hershall Morse, served in the United States Marine Corps from May 22, 1972 through August 9, 1982 when he was honorably discharged as a Chief Warrant Officer – 2 (CWO-2).

18.     Plaintiff's right leg was amputated above his right knee on June 25, 2010 due to a massive infection in his right prosthetic knee.

19.     Plaintiff's right knee was known to be infected in May 2009 as noted in Consult Requests Addendum, dated May 18. 2009.  See Exhibit 3, page 345.  (Exhibit 3 page numbers are page numbers of VAMC Little Rock records).

20.     Unfortunately, on June 23, 2009, Richard Evans, M.D., negligently concluded in his Progress Note (See Exhibit 3, page 1371) that plaintiff's right knee prosthetic joint wasn't infected because, as stated in his Progress Note, the synovial fluid culture obtained on May 14, 2009 was negative for bacterial growth (See Exhibit 3, page 1372).

21.     Synovial fluid cultures have a high false negative rate with prosthetic joint infections.  Hence, a negative synovial fluid culture does not rule out a prosthetic joint infection.

22.     Dr. Evans was not only negligent for referring plaintiff to follow-up with his primary care physician, but Dr. Evans was also negligent for not prescribing any antibiotics to plaintiff on June 23, 2009 for his right knee prosthetic joint infection.

23.     As a result, the infection progressed to such an extent that plaintiff not only had to have his leg amputated above the knee, but also nearly died from septic shock (See Exhibit 3, page 1020).

4

24.     The negligence of Dr. Evans proximately caused plaintiff's right leg to be amputated above the knee.

25.     MD Attending Note, dated June 24, 2010 states "His knee has been known to be infected for over a year now." (See Exhibit 3, page 1020).

26.     This is clearly a case of medical negligence, which resulted in the near death of plaintiff as well as loss of plaintiff's right leg above the knee.

27.     Dr. Evans fell well below the standard of care on June 23, 2009 when he concluded that plaintiff's right leg knee prosthetic joint was not infected because the synovian fluid culture was negative.

28.     The synovial fluid culture of the purulent synovial fluid obtained on June 19, 2010, prior to plaintiff's surgery to his right leg to amputate it due to massive infection, was also negative for bacterial grown. (See Exhibit 3, Lab Results, page 151).

29.     Gregory Ardoin, M.D., examined plaintiff on May 18, 2009 and reviewed lab results which suggested clinical chronic infected right total knee arthroplasty (TKA). (See Exhibit 3, Consult Requests, page 345).

30.     Dr. Ardoin stated he would check with David Sward, M.D., for definitive treatment options.

31.     Current recommendations were a stage one revision TKA.

32.     The Operation Report, dated June 25, 2010, found the "infection to be massive and spread widely, even to the intramedullary canal of the tibia and distally along the tibia with absence or erosion of the medial tibial wall metaphysic: Hypertrophic synovium. The patellar tendon was also inflamed." (See Exhibit 3, Surgical Information, page 1449)

33.     Plaintiff was entitled to medical care and treatment from the DVA pursuant to Title 38 CFR as an honorably discharged veteran of the USMC.

34.     As an honorably discharged United State Marine Corps veteran, he sought medical care and treatment at the VAMC Little Rock.

35.     Beginning May 14, 2009 plaintiff sought treatment for pain, redness of skin and swelling of right leg.

36.     Plaintiff was examined by Dr. Ardoin who did a blood workup for infection (see Exhibit 3, Consult Request, page 343-344), with CBC, CRP, sed rate, aspiration of the knee with analysis of synovial fluid with cultures, sensitivities, and cell count.

37.     Dr. Ardoin also requested a bone scan to rule out evidence of loosening or infection.  Dr. Adroin reviewed the plan with Dr. Henderson and Dr. Sward who were both in agreement with Dr. Adroin's plan.  Plaintiff was asked to return in two weeks to review results of tests.

38.     Lab results from May 18, 2009 Addendum suggest clinical chronic infected right TKA, will discuss results with Dr. Sward for definitive treatment options and that patient will need a stage one revision TKA per current recommendation.  (See Exhibit 3, page 345).

39.     Plaintiff returned to VAMC Little Rock on June 23, 2009 (See Exhibit 3, Progress Notes, page 1371-1372) to orthopedics.  Dr. Evans, the attending surgeon, noted after examination that "there is no evidence or signs of infection."  Dr. Evans noted "bone scan also shows increased uptake right knee consistent with infection versus loosening." Labs of the knee aspiration, however, reveal that he is culture negative." "His clinical course is significantly consistent ... throughout his surgical

course and not having an onset of pain or any other sign or symptom or positive culture

that would be consistent with infection." "Plan at this point is to refer him back to his

primary care physician."

40.     Dr. Evans wrongfully concluded on June 23, 2009 that plaintiff did not

have an infection because the synovial culture obtained on May 14, 2009 was negative.

41.     A negative culture does not rule out a prosthetic joint infection.  In fact,

twenty-five percent (25%) of synovial cultures are falsely negative.  (See Exhibit 4,

Proof of Negligence for Federal Tort, pages 7-13, Laboratory Findings for Infected Total

Knee Replacement.)

42.     Plaintiff was "Lost to Follow Up" and did not return until June, 2010 with a

grossly infected appearing right knee joint.

43.     Plaintiff's knee joint was tapped and fluid was sent for culture and cell

count.  The culture turned out to be negative as before.  However, his cell count was

high (See Exhibit 3, Lab Results, page 151), 164,000 cell count with purulent appearing

fluid.  Plaintiff was finally determined to have an infected TKA.

44.     Plaintiff was "Lost to Follow Up" by the Orthopedic clinic because Dr.

Evans, on June 23, 2009 incorrectly concluded that plaintiff did not have a prosthetic

joint infection.

45.     Dr. Evans referred the plaintiff to follow up with his primary care physician.

46.     Dr. Evans was negligent for concluding that plaintiff did not have a

prosthetic joint infection on June 23, 2009 when Dr. Ardoin and Dr. Sward had

previously and correctly, on May 14, 2009, concluded that plaintiff did indeed have a

prosthetic joint infection.

47.     Dr. Evans is unequivocally responsible for plaintiff not receiving timely antibiotic treatment of his prosthetic joint infection in 2009.

48.     Plaintiff was not aware he had a prosthetic joint infection in 2009 because, Dr. Evans, on June 23, 2009, incorrectly concluded that plaintiff did not have a prosthetic joint infection.

49.     Dr. Evans stated the following in the Orthopedics Consult Results dated June 23, 2009 (See Exhibit 3, page 1372): ...Labs of the knee aspiration, however, reveal that he is culture negative. Although the CRP [>120] and sedimentation rate [35] are high and the differential in the knee aspirate is only 56%, and we can likely attribute this to his renal failure and chronic medical conditions. Given the fact that he does not have clinical signs, symptoms, or culture positive results, I think we can safely say he has got chronic loosening of his right knee. His clinical course is significantly consistent with this having had chronic pain consistently throughout his surgical course and not having an onset of pain or any other sign or symptom or positive culture that would be consistent with an infection."

50.     According to the 5/18/2009 ADDENDUM, the right knee aspiration results not only revealed that the CRP [>120] and sedimentation [35] were elevated, but they also showed that the synovial fluid contained 27,500 WBCs with 89% segs.  Thus, the differential was 89%, not 56%, as Dr. Evans erroneously stated above. (See Exhibit 3, Addendum dated May 14, 2009, page 345).

51.     With regard to the lab results mentioned above, Dr. Ardoin stated the following in the 5/18/2009 ADDENDUM: "Lab results suggest clinical chronic infected right TKA [total knee arthroplasty].

8

52.     Plaintiff's elevated synovial fluid white blood count [27,500] with eighty-nine percent (89%) segs, elevated CRP [>120], and elevated sedimentation rate [35] were clearly secondary to plaintiff's prosthetic joint infection.

53.     Dr. Evans negligently concluded that the plaintiff's CRP [>120]  and sedimentation rate [35] were elevated secondary to renal failure and chronic medical conditions.

54.     Dr. Evans was also negligent for not being aware that plaintiff's WBC count (27,500) contained 89% segs.

55.     Furthermore, Dr. Evans was negligent for not realizing that that plaintiff's synovial fluid WBC count  [27,500] which contained 89% segs, was consistent with a prosthetic joint infection, and not aseptic failure.

56.     Dr. Evans' conclusion that the plaintiff did not have clinical signs or symptoms of a prosthetic joint infection was also negligent.

57.     During Dr. Evans' physical examination of the plaintiff's right knee he noted the following: "Physical exam reveals grossly swollen, somewhat flexion contracture of the right knee of approximately 10 degrees, He has an extensively antalgic gait using a cane just to get by with short distances."

58.     A "grossly swollen" knee is consistent with, and is a sign/symptom of, a joint infection.

59.     An "antalgic gait" is a sign/symptom of a joint infection.

60.     Knee pain is unequivocally a sign/symptom of a joint infection

61.     Dr. Evans' conclusion that the plaintiff did not have a prosthetic joint infection because the synovial fluid culture was negative was negligent.

62.     To reiterate, a negative synovial fluid culture does not rule out a prosthetic joint infection. Synovial fluid cultures have a high false negative rate [25%] with prosthetic joint infections.

63.     See Exhibit 4, Proof of Negligence for Federal Tort Claim Arising from Negligence of Dr. Evans on June 23, 2009", pages 7-8, *Laboratory Findings for Infected Total Knee Replacement* - http://www.wheelessonline.com/ortho/infected_tkr_labs): "Cultures:, false negatives, twenty-five percent (25%) false negative result with aspiration rate means that positive cultures often will be isolated only after components are removed and cultured."

64.     See Exhibit 4, Proof of Negligence for Federal Tort Claim Arising from Negligence of Dr. Evans on June 23, 2009", pages 7-8, - *Synovial fluid leukocyte count and differential for the diagnosis of prosthetic knee infection* - http://www.ncbi.nlm.nih.gov/pubmed/15465503?dopt=Abstract:  PURPOSE: …Our aim was to define cutoff valves for synovial fluid leukocyte count and neutrophil percentage for differentiating aseptic failure and prosthetic joint infection.   METHODS: We performed a study of 133 patients in whom synovial fluid specimens were collected before total knee arthroplasty revision between January 1998 and December 2003... RESULTS: Aseptic failure was diagnosed in 99 patients and prosthetic joint infection was diagnosed in 34 patients. The synovial fluid leukocyte count was significantly higher in patients with prosthetic joint infection (median, 18.9 x 10(3)/microL; range, 0.3 to 178 x 10(3)/microL) than in those with aseptic failure (median, 0.3 x 10(3)/microL; range, 0.1 to 16 x 10(3)/microL; P <0.0001); the neutrophil percentage was also significantly higher in patients with prosthetic joint infection (median [range], 92% [55% to 100%] vs. 7%

[0% to 79%], P <0.0001). A leukocyte count of >1.7 x 10(3)/microL had a sensitivity of 94% and a specificity of 88% for diagnosing prosthetic joint infection; a differential of >65% neutrophils had a sensitivity of 97% and a specificity of 98%. Staphylococcus aureus was the only pathogen associated with leukocyte counts >100 x 10(3)/microL. CONCLUSION: A synovial fluid leukocyte differential of >65% neutrophils (or a leukocyte count of >1.7 x 10(3)/microL is a sensitive and specific test for the diagnosis of prosthetic knee infection in patients without underlying inflammatory joint disease.

65.    On May 18, 2009 plaintiff's synovial fluid had 27,500 WBCs with differential of eighty-nine percent (89%) segs/neutrophils.  These lab results are consistent with a prosthetic joint infection, and not aseptic failure.

## COUNT ONE:  NEGLIGENCE OF DEFENDANT

66.    Plaintiff adopts and incorporates by reference the allegations of paragraphs 1-65 above and further alleges:

67.    Dr. Evans, acting through VAMC Little Rock as an agent and employee, failed to possess and apply with reasonable care and learning ordinarily possessed and used by members in his specialty in good standing engaged in the same specialty and locality of Pulaski County or in a similar locality.

68.    The VAMC Little Rock through it's agents and employees, including Dr. Evans,  were negligent and it's acts consisted of the following among other things:

      a.  Failure to properly diagnose infection in plaintiff's right leg prosthetic joint on May 14, 2009.

      b.  Failure to prescribe antibiotics to plaintiff on May 14, 2009 for right leg prosthetic joint injection.

c.  Failure to properly follow up with plaintiff after examination on June 23, 2009.

d.  Failure to properly interpret and follow up on lab results from synovial culture obtained on May 14, 2009 from plaintiff's right leg prosthetic joint.

e.  Failure of Dr. Evans to consult with Dr. Ardoin and Dr. Sward who concluded on May 14, 2009 that plaintiff's right leg prosthetic joint was infected.

f.  Failure to promptly institute appropriate clinical intervention and/or treatment.

g.  These negligent acts proximately resulted in the total amputation of plaintiff's right leg, economic losses, need for aid and assistance, loss of earnings and earning capacity and other damages referable to plaintiff which will be more fully provided at trial.

69.    Defendant, USA, by and through it's agents and employees, failed to possess and apply with reasonable care and learning ordinarily possessed and used by members in Dr. Evans' specialty in good standing engaged in the same specialty and locality of Pulaski County or in a similar locality.

70.    As a direct and proximate result of the negligent care and treatment rendered by the defendant, USA, through it's agents and employees, including Dr. Evans, plaintiff has suffered permanent injuries to his health, including but not limited to physical and psychological pain, need for assistance with a wheelchair, a prosthetic leg, crutches, has suffered past and future damages including but not limited to pain and

suffering, mental anguish, physical disability, debilitation, impairment, disfigurement, decreased survival, loss of sex drive or function, loss of earning capacity, and loss of enjoyment of life.

71.    The extent of said damages will be fully shown at the time of trial and are in an amount not to exceed that which was contained in the Claim for Damages, Injury or Death of $950,000.00.  See Exhibit 1.

72.    As a further proximate result of the tortuous conduct of the USA, plaintiff has incurred expenses for medical treatment and related expenses and will continue to incur such expenses for treatment and related needs throughout his lifetime.

73.    The full amount of said damages for medical and related expenses will be fully shown at the time of trial.

74.    As a further direct and proximate result of the tortuous conduct of USA, the plaintiff has incurred past and future lost earnings and lost earning capacity.

75.    The full amount of said special damages for lost earnings and lost earning capacity will be fully shown at trial.

76.    USA directly and/or through it's agents, servants and employees negligently failed to possess and exercise that degree of skill, care and learning expected and ordinarily possessed and exercised by reasonably prudent physicians, nurses, attendants, assistants, consultants, and other health care providers practicing in the State of Arkansas and/or in the same or similar locality.

77.    The acts and omissions of USA, through its employees, agents and servants at VAMC Little Rock, directly and proximately caused injuries to the plaintiff.

78.     USA is vicariously liable for negligence of the physicians and other health care professionals who were negligent in providing substandard medical care and treatment to plaintiff during the period May, 2009 through the present as set out herein.

79.     Plaintiff certifies that the medical care rendered by the USA has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Federal Rules of Evidence and is willing to testify that the care providerd by USA did not comply with applicable standard of care.

## COUNT TWO: INSTITUTIONAL NEGLIGENCE

80.     Plaintiff adopts and incorporates by reference the allegations of paragraphs 1 through 79 above and further alleges as follows:

81.     At all times relevant, USA and its agents and employees had a non-delegable duty to provide timely and appropriate medical care to all patients, including the plaintiff.

82.     At all times relevant, USA had a duty to use reasonable care in the hiring, supervision, training and retention of agents and employees who provided medical care and treatment to patients.

83.     At all times relevant, USA had a continuing duty to investigate the competence of its agents and employees and the policies and procedures under which they operated for the provision of medical care and treatment and to take appropriate remedial measures where warranted.

84.     At all times relevant USA had a duty to supervise it's agents and employees to ensure that policies and procedures were being implemented in accordance with acceptable standards of care.

85.     As a direct and proximate result of this negligence of USA and its agents and employees, plaintiff has sustained permanent severe physical injuries, requiring extensive ongoing medical care and treatment and has suffered severe physical and mental pain and suffering, loss of enjoyment of life, reduced life expectancy, loss of income, reduced earnings capacity, permanent disability and other losses and is entitled to compensation in the amount delineated in Claim for Damage, Injury or Death of $950,000.00.  See Exhibit 1.

**COUNT THREE: CAUSE OF ACTION FOR LACK OF INFORMED CONSENT**

86.     Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 through 85 above, and further alleges as follows:

87.     USA failed to provide plaintiff with the information that reasonably prudent medical practitioners should have provided under the circumstances, and failed to make plaintiff aware of the risks and benefits of and the alternatives to the procedures employed.

88.     A reasonably prudent person, being fully informed, would not have consented to the procedures employed by USA, it's agents, servants and employees.

89.     As a direct and proximate result of this negligence of USA and its agents and employees, plaintiff has sustained permanent severe physical injuries, requiring extensive ongoing medical care and treatment and has suffered severe physical and mental pain and suffering, loss of enjoyment of life, reduced life expectancy, loss of income, reduced earnings capacity, permanent disability and other losses and is entitled to compensation in the amount delineated in Claim for Damage, Injury or Death of $950,000.00.  See Exhibit 1.

## COUNT FOUR:  LOSS OF CONSORTIUM

Plaintiff, Hershall Morse and his wife, Plaintiff, Robin Morse, adopt and incorporate by reference the allegations of paragraphs 1 through 89 above and further allege as follows:

90.     Plaintiff, Robin Morse, as wife and help mate of plaintiff, is entitled to and should recover the following damages:

a.  Loss of consortium, services, comfort, society, companionship and nurture.

b.  Mental and physical pain and anguish, disability, impairment and loss of quality and enjoyment of life.

c.  Pecuniary losses, including the value of her aid and attendance to plaintiff.

d.  Such other damages as the Court deems appropriate.

## PRAYER

WHEREFORE, the plaintiffs, Hershall Morse and Robin Morse, pray that this Court enter judgment against the defendant, United States of America, in an amount of Ten Million Dollars ($10,000,000.00) together with interest and costs of this action, and for any and all other relief this Court deems just and reasonable.

Respectfully submitted,

Callis L. Childs, P.A. (Bar No. 80026)
Attorney at Law
243 Hwy. 64 East
Conway, AR 72032
(501) 327-1700
(501) 327-6066 - fax
cchilds@tcworks.net

_____

Michael R. Lipscomb
Wallace, Martin, Duke & Russell
212 Center Street, Suite 100
Little Rock, AR 72201
(501) 375-5545
(501) 374-9515 – fax
mrlipscomb1@yahoo.com

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| | Hershall Morse<br>1204 W. Kansas, Unit D4<br>Beebe, AR 72012 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. or P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☐ CIVILIAN | 1-20-53 | married | May 2009 | |

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof.) (Use additional pages if necessary.)

May 2009, began seeing Dr. Richard Evans and Dr. James McCoy, orthopaedic surgeons at John L. McClellan Memorial Veterans Hospital for right knee pain. June 25, 2010 went to the emergency room at McClellan VA Hospital. Admitted for massive infection in the bone and muscle tissue and had surgery for above the knee amputation with complications. Discharged August 6, 2010. After discharge, obtained all VA records which showed numerous notations of possible infection with no follow-up prior to June 25, 2010.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
| Robin Morse, wife<br>Justin Crowder, step-son | 1204 W. Kansas, Unit D4<br>Beebe, AR 72012 |

| 12. (See instructions on reverse) | AMOUNT OF CLAIM (In dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| | $950,000.00 | | 0.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| Hershall W Morse | 501-837-8786 | 4/29/11 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or impri- or both. (See 18 U.S.C. 287, 1001.) |

95-109
Previous editions not usable.

NSN 7540-00-634-4046

EX 1

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:*  The requested information is solicited pursuant to one or more of the following:  5 U.S.C. 301, 38 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R.

B. *Principal Purpose:*  The information requested is to be used in evaluating claims.

C. *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim

## INSTRUCTIONS
### Complete all items - insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A <u>SUM CERTAIN</u> FOR INJURY TO OR LOSS OF

PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT.  THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN <u>TWO YEARS</u> AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in Item #1 on the reverse side.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14.  Many agencies have published supplemental regulations also.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in Item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid".  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden,

to  Director, Torts Branch
Civil Division
U.S. Department of Justice
Washington, DC  20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC  20503

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance?   ☐ Yes, If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* and policy number.   ☐ No

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

17. If deductible, state amount

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim?  *(It is necessary that you ascertain these facts)*

19. Do you carry public liability and property damage insurance?   ☐ Yes, If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)*   ☐ No

SF 95 (Rev. 7-85) BACK



**DEPARTMENT OF VETERANS AFFAIRS**
Office of the General Counsel
Washington DC 20420

NOV - 6 2012

<u>CERTIFIED MAIL</u>

In Reply Refer To:

Callis L. Childs, PA
Attorney at Law                             021B:SJP:17263
243 Highway 64 East
Conway, Arkansas 72032

Re:  Administrative Tort Claim of Hershall Morse – Request for Reconsideration

Dear Mr. Morse:

We have now completed our reconsideration of the above-referenced matter under the Federal Tort Claims Act (FTCA), and this claim is again denied.  The FTCA provides a legal remedy enabling an individual to recover damages under circumstances where the United States, if it were a private person, would be liable.  Our review revealed no evidence of any negligent or wrongful act or omission on the part of an employee of the Department of Veterans Affairs (VA) acting within the scope of his or her employment that caused injury to your client in connection with his treatment at the Central Arkansas Veterans Healthcare System over the period from May 2009 to June 2010, during which time he was seen for symptoms relating to a variety of conditions, and underwent an above-knee amputation of his right leg on June 25, 2010.

Further action on the matter may be instituted in accordance with the FTCA, sections 1346(b) and 2671-2680, title 28, United States Code, which provides, in effect, that a tort claim that is administratively denied may be presented to a Federal district court for judicial consideration.  Such suit must be initiated, however, within 6 months after the date of mailing of this notice of final denial as shown by the date of this letter (section 2401(b), title 28, United States Code).  If such suit is filed, the proper party defendant would be the United States, not VA.

Please note that FTCA claims are governed by a combination of Federal and state laws.  Some state laws may limit or bar a claim or law suit.  VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice to you regarding the impact of state laws or state filing requirements.

Sincerely yours,

*Kathryn Simpson*
/oz
E. Douglas Bradshaw, Jr.
Assistant General Counsel

cc:  VA Regional Counsel, Nashville, TN

EX 2

# Consult Requests

infection with CBC, CRP, sed rate, aspiration of the knee with
analysis of synovial fluid with cultures, sensitivities, cell
count. We will also get a bone scan to rule out any loosening
or evidence of infection. We will have him come back to clinic
in two weeks. I discussed these findings with Dr. Henderson as
well as Dr. Sward who both were in clinic today. They agree
with my plan. We will see him back in a couple of weeks to
review these tests.


ASR:Infoprogroup
D:  05/14/09@1403                    T: 05/14/09
INFOPRO/800502/JOB#:358371

/es/ GREGORY T ARDOIN
PGY5 MD
Signed: 05/18/2009 05:29


05/18/2009 ADDENDUM                    STATUS: COMPLETED
Pt's lab results returned.
Right knee aspiration results. WBC 27500 with 89%segs.
Culture/gram stain  many WBC's no bacteria. no growth to date.
ESR >120 CRP 35 WBC normal.

Lab results sugest clinical chronic infected right TKA.
will discuss results with Dr. Sward for definitive treatment options.
pt will need stage one revision TKA per current recommendations.

/es/ GREGORY T ARDOIN
PGY5 MD
Signed: 05/18/2009 05:43

Receipt Acknowledged By:
05/18/2009 06:28      /es/ DAVID T SWARD
                      STAFF SURGEON
=================================== END ===================================


Current PC Provider:    BURNHAM,WILLIAM W
Current PC Team:        FIRM A
Current Pat. Status:    Outpatient
Primary Eligibility:          NSC

Order Information
To Service:        PHARMACY ERYTHROPOIETIN/DARBEPOETIN APPROVAL
From Service:      LR RENAL APN SP1
Requesting Provider:  HILDEBRAND,CYNTHIA L

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012         Printed at CENTRAL ARKANSAS HCS      EX 3
429022249

# Progress Notes

STANDARD TITLE: NURSE PRACTITIONER NOTE
DATE OF NOTE: JUN 29, 2009@15:03      ENTRY DATE: JUN 29, 2009@15:03:06
        AUTHOR: LINDSEY,JUDY L        EXP COSIGNER:
        URGENCY:                      STATUS: COMPLETED

pre/liver review labs ordered.

/es/ JUDY L LINDSEY 257-5784
REGISTERED NURSE PRACTITIONER
Signed: 06/29/2009 15:03

LOCAL TITLE: ORTHOPEDICS CONSULT RESULTS
STANDARD TITLE: ORTHOPEDIC SURGERY CONSULT
DATE OF NOTE: JUN 23, 2009@13:00      ENTRY DATE: JUN 23, 2009@15:15:17
        AUTHOR: EVANS,RICHARD P       EXP COSIGNER:
        URGENCY:                      STATUS: COMPLETED

DATE OF EXAMINATION:  June 23, 2009.

EXAM:  The patient is a 56-year-old male who has had five right
knee operations done apparently by Dr. Lowery Barnes per the patient.
He is not a good historian. This includes primary knee replacement followed by
arthroscopy followed by revision knee arthroplasty followed by arthroscopy
followed by a repeat revision arthroplasty. Patient states he
has never had a painless day.

He also has a complex medical history of having had pasteurella
sepsis apparently from a pet cat that he has. This shut down
his kidneys at one point with chronic sepsis. He has been told
today that his renal function is so poor that he is likely going
to need to go on dialysis. He states also that his renal
physicians will not allow any surgery given the shape that he is
in.

Physical exam reveals grossly swollen, somewhat flexion
contracture of the right knee of approximately 10 degrees. He
has an extensively antalgic gait using a cane just to get by
with short distances.

Physical exam also reveals the skin is intact. It is
neurovascularly intact. There is no evidence or signs of
infection. Alert and oriented times three and appears to be
relatively intelligent regarding his current condition.

X-ray reveals complex revision total knee arthroplasty with long
intramedullary tibial stem. It should be noted the patient does

---

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
429022249

**VISTA Electronic Medical Documentation**

Printed at CENTRAL ARKANSAS HCS

# Progress Notes

have pain on occasion at the end of the stem resembling "shin splints."

Bone scan also shows increased uptake right knee consistent with infection versus loosening.

Labs of the knee aspiration, however, reveal that he is culture negative. Although the CRP and sedimentation rate are high, the differential in the knee aspirate is only 56%, and we can likely attribute this to his renal failure and chronic medical conditions.

Given the fact that he does not have clinical signs, symptoms, or culture positive results, I think we can safely say he has got chronic loosening of his right knee. His clinical course is significantly consistent with this having had chronic pain consistently throughout his surgical course and not having an onset of pain or any other sign or symptom or positive culture that would be consistent with an infection.

Plan at this point is to refer him back to his Primary Care physician. If he is going back on dialysis, he will ultimately need clearance in order to proceed with revision right total knee arthroplasty which he will need. He will likely need an extensive revision knee arthroplasty, and my preference would be a Legion Smith and Nephew knee replacement with significant augmentation.

He will return once cleared for elective revision right total knee arthroplasty surgery.

ASR:Infoprogroup
D:  06/23/09@1319          T: 06/23/09
800635/JOB#: 394029

/es/ Richard P. Evans, M.D.
Orthopedic Surgery - Adult Reconstruction
Signed: 06/24/2009 07:22

LOCAL TITLE: ORTHOPEDIC SURGERY
STANDARD TITLE: ORTHOPEDIC SURGERY NOTE
DATE OF NOTE: JUN 23, 2009@13:20     ENTRY DATE: JUN 23, 2009@13:20:33
    AUTHOR: EVANS,RICHARD P     EXP COSIGNER:
    URGENCY:                    STATUS: COMPLETED

    *** ORTHOPEDIC SURGERY Has ADDENDA ***

---

PATIENT NAME AND ADDRESS (Mechanical Imprinting, If available)

**VISTA Electronic Medical Documentation**

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
429022249

Printed at CENTRAL ARKANSAS HCS

1372

# Progress Notes

pressure ulcers.
    Provide patient/caregiver education regarding treatment plan for
    pressure ulcers.
    Teach patient/caregiver importance of changing position frequently for
    pressure ulcer prevention.
  Pressure-Redistribution Measures
    Encourage small, frequent position changes
    Turn and reposition every 2 hours while in bed, using pillows to
    separate pressure areas
    Elevate heels using pillows or foam blocks
  Maximize Mobilization
    Encourage activity as tolerated
  Manage Moisture
    Maintain clean and dry skin
  Manage Nutrition
    Provide or encourage oral care as needed
    Monitor fluid/food intake
  Reduce Friction and Shear
    Keep head of bed at or below 30 degrees when not eating


/es/ JEREMY S GARNER
RN
Signed: 06/24/2010 14:27

---

  LOCAL TITLE: MD ATTENDING
STANDARD TITLE: ATTENDING NOTE
DATE OF NOTE: JUN 24, 2010@10:00      ENTRY DATE: JUN 24, 2010@10:00:35
     AUTHOR: MCCOY,JAMES RALPH     EXP COSIGNER:
     URGENCY:                          STATUS: COMPLETED

Apparently there was some confusion this am regarding the urgency of Mr. Morse's
planned knee surgery. After talking with the Medicine attending(s)I learned
that they do not feel that the surgery is an emergency and could be done
tomorrow without undue risk to this patient. He is indeed an ill individual and
currently is on a dopamine drip and his urine output is minimal. As ill as he
is, Dr. Sward and I both agree that the better part of valor for him might be to
perform an AK amputation rather than stage 1 of a TKA revision. His knee has
been known to be infected for over a year now. The suspected reason for his
"code" yesterday by the medicine service is that of either an air embolism or
possibly a PE. Will discuss with Dr. Evans who was originally planning to do
the Stage 1 revision and get his input.

/es/ JAMES RALPH MCCOY
MD
Signed: 06/24/2010 10:08
  LOCAL TITLE: RENAL CONSULT RESULTS

---

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
429022249

**VISTA Electronic Medical Documentation**

Printed at CENTRAL ARKANSAS HCS

# Lab Results

Evaluation for CARBON:
NON SMOKER 0-3 %
SMOKER     0-10 %

b. DB DTM RIGHT RADIAL ARTERY ON ROOM AIR
c. If a NLR outpatient, please print request to PT1793.
   If a LR outpatient, please print request to PT62203.
   DB MDD RIGHT RADIAL ARTERY
   30% 500 AC-20 +5
   READ BACK CONFIRMED TO DR. KUMAR
d. DB SM *AL
   vent 50%, vt 450, rate 12, +5
e. DB OR6 Aline
f. DRAWN BY OR 6
g. AC 12/450/+5/.25-CONFIRMED WITH DR. BADAREDDI
h. If a NLR outpatient, please print request to PT1793.
   If a LR outpatient, please print request to PT62203.
   DB JC LEFT RADIAL ARTERY
   AC/18/550/60%/PP+5
i. If a NLR outpatient, please print request to PT1793.
   If a LR outpatient, please print request to PT62203.
   AC/18/550/80%/+5
   LEFT RADIAL ARTERY DB JC
j. If a NLR outpatient, please print request to PT1793.
   If a LR outpatient, please print request to PT62203.
   DB JC MN #2 RIGHT RADIAL ARTERY PT ON 15L NRB
   RESULTS TAKEN TO DR. BADREDDI

---- SYNOVIAL ----

| SYNOVIAL FLUI | COLOR | TURBID | WBC | RBC | LYMPHS | PMN | AMYLASE | CRYSTA |
|---|---|---|---|---|---|---|---|---|
| Ref range low | | | 0 | <10000 | | | | NEGATIVE |
| Ref range high | | | 200 | | | | | |
| | | | #/uL | #/uL | | | | |
| a 06/19/2010 09:21 | RED/TURBID | | 164500.0 | H380000.00 | 5 | | | |
| b 05/14/2009 16:26 | ORANGE/CLDY | | 27200.0 | H50000.00 | 11 | | | NEGATIVE comment |

| SYNOVIAL FLUI | GLUCOS | PROTEI g/dL | SP.GRAV | PH |
|---|---|---|---|---|

a. Aspirated from right knee.
   Aspirated from right knee.
   SAMPLE RECEIVED IN 2 EDTA TUBES
b. Aspirated from right knee.
   Aspirated from right knee.
   NO CRYSTALS OBSERVED

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
4 29022249

**VISTA Electronic Medical Documentation**

Printed at CENTRAL ARKANSAS HCS

# Consult Requests

infection with CBC, CRP, sed rate, aspiration of the knee with
analysis of synovial fluid with cultures, sensitivities, cell
count. We will also get a bone scan to rule out any loosening
or evidence of infection. We will have him come back to clinic
in two weeks. I discussed these findings with Dr. Henderson as
well as Dr. Sward who both were in clinic today. They agree
with my plan. We will see him back in a couple of weeks to
review these tests.


ASR:Infoprogroup
D:   05/14/0981403
INFOPRO/800502/JOB#:358371                    T: 05/14/09

/es/ GREGORY T ARDOIN
PGY5 MD
Signed: 05/18/2009 05:29

05/18/2009 ADDENDUM                      STATUS: COMPLETED
Pt's lab results returned.
Right knee aspiration results.  WBC 27500 with 89%segs.
Culture/gram stain  many WBC's no bacteria. no growth to date.
ESR >120 CRP 35 WBC normal.

Lab results suggest clinical chronic infected right TKA.
will discuss results with Dr. Sward for definitive treatment options.
pt will need stage one revision TKA per current recommendations.

/es/ GREGORY T ARDOIN
PGY5 MD
Signed: 05/18/2009 05:43

Receipt Acknowledged By:
05/18/2009 06:28        /es/ DAVID T SWARD
                        STAFF SURGEON
==============================================================
============================ END =============================

Current PC Provider:   BURNHAM,WILLIAM W
Current PC Team:       FIRM A
Current Pat. Status:   Outpatient
Primary Eligibility:        NSC

Order Information
To Service:        PHARMACY ERYTHROPOIETIN/DARBEPOETIN APPROVAL
From Service:      LR RENAL APN SP1
Requesting Provider:  HILDEBRAND,CYNTHIA L

---

**PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)**

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS   72012
429022249

**VISTA Electronic Medical Documentation**

Printed at CENTRAL ARKANSAS HCS

# Surgical Information

---------------------------------------------------------------------
                          OPERATION REPORT
---------------------------------------------------------------------
LOCAL TITLE: OPERATION REPORT
STANDARD TITLE: OPERATIVE REPORT
    DICT DATE: JUN 25, 2010          ENTRY DATE: JUN 25, 2010@13:10:26
     SURGEON: SAHU,DIPIT             ATTENDING: EVANS,RICHARD P
     URGENCY: routine                   STATUS: COMPLETED
     SUBJECT: Case #: 181983


ATTENDING SURGEON:  Richard P. Evans, M.D.

ASSISTANT SURGEON:  Dipit Sahu, M.D.

PREOPERATIVE DIAGNOSIS:  Infected total knee arthroplasty right
limb.

POSTOPERATIVE DIAGNOSIS:  Infected total knee arthroplasty right
limb.

PROCEDURE PERFORMED:  Above-knee amputation right side.

ESTIMATED BLOOD LOSS:  1800 ml.

SPECIMEN:  Synovium tissue sent for biopsy and culture.

FINDINGS:  Infection found to be massive and spread widely, even
to the intramedullary canal of the tibia and distally along the
tibia with absence or erosion of the medial tibial wall
metaphysis.  Hypertrophic synovium.  The patellar tendon was also
inflamed.

HISTORY:  The patient has had a total knee arthroplasty somewhere
outside and was subsequently also revised for the same multiple
times.  He was seen by Dr. Evans 1 year back in May 2009 wherein
he was advised to undergo a revision as he had loosening, failure
and infection of the TKA.  However, he was lost to followup and
did not turn up in the clinic to us so his treatment was not
followed by us as he did not report to us after May of last year.
Please note, even his wife was not aware that he had avoided
getting treated for this total knee infection since last year.
However, he did show up after a year, this June, with a grossly
infected-appearing knee joint.  His knee joint was then tapped
and fluid was sent for culture cell count.  The culture turned
out to be negative, however, the cell count was high, 164,000
cell count with a purulent-appearing fluid.  He was also
determined to have an infected TKA.  He was scheduled to undergo

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
429022249

**VISTA Electronic Medical Documentation**

Printed at CENTRAL ARKANSAS HCS

# Consult Requests

Printed On Aug 24, 2010

PRINTED TO PT61180$PRT   04/22/09 08:35
SCHEDULED                04/22/09 13:17        HILDEBRAND,CYNTHI    REEL,LESLIE K
ORTHO GENERAL NC LR (SPEC I) Consult Appt. on 05/21/09 @ 14:30
knee

STATUS CHANGE            05/01/09 15:42        HILDEBRAND,CYNTHI    REEL,LESLIE K
ORTHO GENERAL NC LR (SPEC I) Appt. on 05/21/09 @ 14:30 was cancelled by the Patient.
Remarks: moved up

SCHEDULED                05/01/09 15:49        REEL,LESLIE K        REEL,LESLIE K
5-14-09

ADDED COMMENT            05/07/09 12:51        REEL,LESLIE K        REEL,LESLIE K
pt. had white county med center send records. The only op note sent was
for an open reduction and internal fixation with bone grafting.

ADDED COMMENT            05/12/09 11:20        REEL,LESLIE K        REEL,LESLIE K
pt. had records faxed from Ark. specialty orthopedics, again no op report
regarding TKA was included

ADDED COMMENT            05/14/09 12:43        REEL,LESLIE K        REEL,LESLIE K
received more information from Searcy Medical Center, still no op report
regarding TKA

INCOMPLETE RPT           05/15/09 06:57        ARDOIN,GREGORY T     WHITE,DEBORAH S
  Note# 20492022
COMPLETE/UPDATE          05/18/09 05:29        ARDOIN,GREGORY T     ARDOIN,GREGORY T
  Note# 20492022
ADDED COMMENT            05/18/09 14:50        REEL,LESLIE K        REEL,LESLIE K
received an op report today of his hardware removal and TKA surgery. I
have forwarded to APN for entry.


Note; TIME ZONE is local if not indicated

----------------------------------------------------------------------

LOCAL TITLE: ORTHOPEDICS CONSULT RESULTS
STANDARD TITLE: ORTHOPEDIC SURGERY CONSULT
DATE OF NOTE: MAY 14, 2009@13:45     ENTRY DATE: MAY 15, 2009@06:57:19
  AUTHOR: ARDOIN,GREGORY T          EXP COSIGNER:
  URGENCY:                          STATUS: COMPLETED

  *** ORTHOPEDICS CONSULT RESULTS Has ADDENDA ***

REASON FOR VISIT:  Right knee pain status post total knee
arthroplasty.

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
429022249

**VISTA Electronic Medical Documentation**

Printed at CENTRAL ARKANSAS HCS

# Consult Requests

HISTORY: The patient is a 56-year-old male with liver and kidney disease. Patient had a history of right tibial plateau fracture and underwent ORIF by Dr. McCoy early-2000s. He subsequently developed severe degenerative arthritis and was seen by Dr. Barnes here in Little Rock who offered him right total knee arthroplasty. This was performed back in 2005 with a long stem tibial implant. I do not have any other records other than that. Patient states he has never really had pain relief since then. He always had pain and swelling in the right lower extremity especially about the right knee. Denies any fevers or chills, but the pain has always been present. He has never been worked up for any type of infection or loosening. He also complains of the fact that he cannot really get his knee out straight.

PROBLEMS: Kidney disease anemia, anemia ,low back pain, cellulitis in the past, hypocalcemia, hyponatremia, hypercholesteremia, LFTs gout.

The patient states he was hospitalize over the past year for severe bacterial infection which was in his blood. He states he thinks it injured his kidneys.

EXAM: He is an extremely overweight white male in no acute distress. Comes in today in a wheelchair. Very pleasant during today's examination. He was alert and oriented x5.

On examination of the right lower extremity, he has good hip range of motion. His knee range of motion is from about -25 to 30 degrees to 130 degrees. He cannot fully extend the knee. Like I said he has about a 30 degree flexor contracture. The knee is stable to varus and valgus stress, anterior posterior stress. He has pitting edema about the right lower extremity, none on the left lower extremity. He has a negative Homan sign. He has palpable pulses. The foot skin is intact. He is able to flex his tendon toes as well as his foot.

X-rays were reviewed from last month reveal overall well-positioned implant with a long tibial stem with no major evidence of loosening on x-ray.

IMPRESSION: Right knee pain status post total knee arthroplasty for posttraumatic arthritis done in 2004 with incomplete relief of pain. Patient also has a history of sepsis over the past year which could have led to infection in the knee.

I explained these findings to the patient and offered workup for

---

**PATIENT NAME AND ADDRESS** (Mechanical imprinting, if available)

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS   72012
429022249

**VISTA Electronic Medical Documentation**

Printed at CENTRAL ARKANSAS HCS

# Consult Requests

infection with CBC, CRP, sed rate, aspiration of the knee with
analysis of synovial fluid with cultures, sensitivities, cell
count. We will also get a bone scan to rule out any loosening
or evidence of infection. We will have him come back to clinic
in two weeks. I discussed these findings with Dr. Henderson as
well as Dr. Sward who both were in clinic today. They agree
with my plan. We will see him back in a couple of weeks to
review these tests.


ASR:Infoprogroup
D:  05/14/09@1403                    T: 05/14/09
INFOPRO/800502/JOB#:358371

/es/ GREGORY T ARDOIN
PGY5 MD
Signed: 05/18/2009 05:29

05/18/2009 ADDENDUM                    STATUS: COMPLETED
Pt's lab results returned.
Right knee aspiration results.  WBC 27500 with 89%segs.
Culture/gram stain  many WBC's no bacteria. no growth to date.
ESR >120 CRP 35 WBC normal.

Lab results sugest clinical chronic infected right TKA.
will discuss results with Dr. Sward for definitive treatment options.
pt will need stage one revision TKA per current recommendations.

/es/ GREGORY T ARDOIN
PGY5 MD
Signed: 05/18/2009 05:43

Receipt Acknowledged By:
05/18/2009 06:28        /es/ DAVID T SWARD
                             STAFF SURGEON

======================================================
======================== END ========================

Current PC Provider:    BURNHAM,WILLIAM W
Current PC Team:        FIRM A
Current Pat. Status:    Outpatient
Primary Eligibility:           NSC

Order Information
To Service:        PHARMACY ERYTHROPOIETIN/DARBEPOETIN APPROVAL
From Service:      LR RENAL APN SP1
Requesting Provider:   HILDEBRAND,CYNTHIA L

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)  | VISTA Electronic Medical Documentation

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS   72012          Printed at CENTRAL ARKANSAS HCS
429022249

# Progress Notes

STANDARD TITLE: NURSE PRACTITIONER NOTE
DATE OF NOTE: JUN 29, 2009@15:03    ENTRY DATE: JUN 29, 2009@15:03:06
     AUTHOR: LINDSEY,JUDY L         EXP COSIGNER:
     URGENCY:                       STATUS: COMPLETED

pre/liver review labs ordered.

/es/ JUDY L LINDSEY 257-5784
REGISTERED NURSE PRACTITIONER
Signed: 06/29/2009 15:03

---

LOCAL TITLE: ORTHOPEDICS CONSULT RESULTS
STANDARD TITLE: ORTHOPEDIC SURGERY CONSULT
DATE OF NOTE: JUN 23, 2009@13:00    ENTRY DATE: JUN 23, 2009@15:15:17
     AUTHOR: EVANS,RICHARD P        EXP COSIGNER:
     URGENCY:                       STATUS: COMPLETED

DATE OF EXAMINATION:   June 23, 2009.

EXAM:  The patient is a 56-year-old male who has had five right
knee operations done apparently by Dr. Lowery Barnes per the patient.
He is not a good historian. This includes primary knee replacement followed by
arthroscopy followed by revision knee arthroplasty followed by arthroscopy
followed by a repeat revision arthroplasty. Patient states he
has never had a painless day.

He also has a complex medical history of having had pasteurella
sepsis apparently from a pet cat that he has. This shut down
his kidneys at one point with chronic sepsis. He has been told
today that his renal function is so poor that he is likely going
to need to go on dialysis. He states also that his renal
physicians will not allow any surgery given the shape that he is
in.

Physical exam reveals grossly swollen, somewhat flexion
contracture of the right knee of approximately 10 degrees. He
has an extensively antalgic gait using a cane just to get by
with short distances.

Physical exam also reveals the skin is intact. It is
neurovascularly intact. There is no evidence or signs of
infection. Alert and oriented times three and appears to be
relatively intelligent regarding his current condition.

X-ray reveals complex revision total knee arthroplasty with long
intramedullary tibial stem. It should be noted the patient does

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
429022249

VISTA Electronic Medical Documentation

Printed at CENTRAL ARKANSAS HCS

p. 1371

Page 1371

# Progress Notes

have pain on occasion at the end of the stem resembling "shin splints."

Bone scan also shows increased uptake right knee consistent with infection versus loosening.

Labs of the knee aspiration, however, reveal that he is culture negative. Although the CRP and sedimentation rate are high, the differential in the knee aspirate is only 56%, and we can likely attribute this to his renal failure and chronic medical conditions.

Given the fact that he does not have clinical signs, symptoms, or culture positive results, I think we can safely say he has got chronic loosening of his right knee. His clinical course is significantly consistent with this having had chronic pain consistently throughout his surgical course and not having an onset of pain or any other sign or symptom or positive culture that would be consistent with an infection.

Plan at this point is to refer him back to his Primary Care physician. If he is going back on dialysis, he will ultimately need clearance in order to proceed with revision right total knee arthroplasty which he will need. He will likely need an extensive revision knee arthroplasty, and my preference would be a Legion Smith and Nephew knee replacement with significant augmentation.

He will return once cleared for elective revision right total knee arthroplasty surgery.

ASR:Infoprogroup
D:  06/23/09@1319          T: 06/23/09
800635/JOB#: 394029

/es/ Richard P. Evans, M.D.
Orthopedic Surgery - Adult Reconstruction
Signed: 06/24/2009 07:22

---

LOCAL TITLE: ORTHOPEDIC SURGERY
STANDARD TITLE: ORTHOPEDIC SURGERY NOTE
DATE OF NOTE: JUN 23, 2009@13:20    ENTRY DATE: JUN 23, 2009@13:20:33
     AUTHOR: EVANS,RICHARD P    EXP COSIGNER:
     URGENCY:                   STATUS: COMPLETED

   *** ORTHOPEDIC SURGERY Has ADDENDA ***

---

| PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation |

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
429022249

Printed at CENTRAL ARKANSAS HCS

P. 1372

# Lab Results

    Evaluation for CARBON:
    NON SMOKER 0-3 %
    SMOKER     0-10 %
 b. DB DTM RIGHT RADIAL ARTERY ON ROOM AIR
 c. If a NLR outpatient, please print request to PT1793.
    If a LR outpatient, please print request to PT62203.
    DB MDD RIGHT RADIAL ARTERY
    30% 500 AC-20 +5
    READ BACK CONFIRMED TO DR. KUMAR
 d. DB SM *AL
    vent 50%, vt 450, rate 12, +5
 e. DB OR6 Aline
 f. DRAWN BY OR 6
 g. AC 12/450/+5/.25-CONFIRMED WITH DR. BADAREDDI
 h. If a NLR outpatient, please print request to PT1793.
    If a LR outpatient, please print request to PT62203.
    DB JC LEFT RADIAL ARTERY
    AC/18/550/60%/PP+5
 i. If a NLR outpatient, please print request to PT1793.
    If a LR outpatient, please print request to PT62203.
    AC/18/550/80%/+5
    LEFT RADIAL ARTERY DB JC
 j. If a NLR outpatient, please print request to PT1793.
    If a JC LR outpatient, please print request to PT62203.
    DB JC MN #2 RIGHT RADIAL ARTERY PT ON 15L NRB
    RESULTS TAKEN TO DR. BADREDDI


               ---- SYNOVIAL ----

| SYNOVIAL FLUI | COLOR | TURBID | WBC | RBC | LYMPHS | PMN | AMYLASE | CRYSTA |
|---|---|---|---|---|---|---|---|---|
| Ref range low | | | 0 | <10000 | | | | NEGATIVE |
| Ref range high | | | 200 | | | | | |
| | | | #/uL | #/uL | | | | |
| a 06/19/2010 09:21 | RED/TURBID | | 164500.0 | H380000.00 | 5 | | | NEGATIVE |
| b 05/14/2009 16:26 | ORANGE/CLDY | | 27200.0 | H50000.00 | 11 | | | comment |


| SYNOVIAL FLUI | GLUCOS | PROTEI | SP.GRAV | PH |
|---|---|---|---|---|
| | | g/dL | | |

 a. Aspirated from right knee.
    Aspirated from right knee.
    SAMPLE RECEIVED IN 2 EDTA TUBES
 b. Aspirated from right knee.
    Aspirated from right knee.
    NO CRYSTALS OBSERVED

---

**VISTA Electronic Medical Documentation**

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
429022249

Printed at CENTRAL ARKANSAS HCS

*Page 151*

# Progress Notes

have pain on occasion at the end of the stem resembling "shin splints."

Bone scan also shows increased uptake right knee consistent with infection versus loosening.

Labs of the knee aspiration, however, reveal that he is culture negative. Although the CRP and sedimentation rate are high, the differential in the knee aspirate is only 56%, and we can likely attribute this to his renal failure and chronic medical conditions.

Given the fact that he does not have clinical signs, symptoms, or culture positive results, I think we can safely say he has got chronic loosening of his right knee. His clinical course is significantly consistent with this having had chronic pain consistently throughout his surgical course and not having an onset of pain or any other sign or symptom or positive culture that would be consistent with an infection.

Plan at this point is to refer him back to his Primary Care physician. If he is going back on dialysis, he will ultimately need clearance in order to proceed with revision right total knee arthroplasty which he will need. He will likely need an extensive revision knee arthroplasty, and my preference would be a Legion Smith and Nephew knee replacement with significant augmentation.

He will return once cleared for elective revision right total knee arthroplasty surgery.

ASR:Infoprogroup
D:  06/23/09@1319          T: 06/23/09
800635/JOB#: 394029

/es/ Richard P. Evans, M.D.
Orthopedic Surgery - Adult Reconstruction
Signed: 06/24/2009 07:22

LOCAL TITLE: ORTHOPEDIC SURGERY
STANDARD TITLE: ORTHOPEDIC SURGERY NOTE
DATE OF NOTE: JUN 23, 2009@13:20     ENTRY DATE: JUN 23, 2009@13:20:33
     AUTHOR: EVANS,RICHARD P     EXP COSIGNER:
     URGENCY:                      STATUS: COMPLETED

    *** ORTHOPEDIC SURGERY Has ADDENDA ***

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)   VISTA Electronic Medical Documentation

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012                    Printed at CENTRAL ARKANSAS HCS
429022249

1372

# Consult Requests

infection with CBC, CRP, sed rate, aspiration of the knee with
analysis of synovial fluid with cultures, sensitivities, cell
count. We will also get a bone scan to rule out any loosening
or evidence of infection. We will have him come back to clinic
in two weeks. I discussed these findings with Dr. Henderson as
well as Dr. Sward who both were in clinic today. They agree
with my plan. We will see him back in a couple of weeks to
review these tests.


ASR:Infoprogroup
D:   05/14/09@1403                    T: 05/14/09
INFOPRO/800502/JOB#:358371

/es/ GREGORY T ARDOIN
PGY5 MD
Signed: 05/18/2009 05:29

05/18/2009 ADDENDUM                   STATUS: COMPLETED
Pt's lab results returned.
Right knee aspiration results. WBC 27500 with 89%segs.
Culture/gram stain  many WBC's no bacteria. no growth to date.
ESR >120 CRP 35 WBC normal.

Lab results sugest clinical chronic infected right TKA.
will discuss results with Dr. Sward for definitive treatment options.
pt will need stage one revision TKA per current recommendations.

/es/ GREGORY T ARDOIN
PGY5 MD
Signed: 05/18/2009 05:43

Receipt Acknowledged By:
05/18/2009 06:28        /es/ DAVID T SWARD
                        STAFF SURGEON
===================================================================
==================================== END ==========================

Current PC Provider:    BURNHAM,WILLIAM W
Current PC Team:        FIRM A
Current Pat. Status:    Outpatient
Primary Eligibility:        NSC

Order Information
To Service:             PHARMACY ERYTHROPOIETIN/DARBEPOETIN APPROVAL
From Service:           LR RENAL APN SP1
Requesting Provider:    HILDEBRAND,CYNTHIA L

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012          Printed at CENTRAL ARKANSAS HCS
429022249

HERSHALL MORSE - PROOF OF NEGLIGENCE FOR FEDERAL TORT
CLAIM ARISING FROM NEGLIGENCE OF DR. EVANS ON JUNE 23, 2009

## INTRODUCTION

Hershall Morse's right leg was amputated above his right knee on 6/25/2010 due
to a massive infection in his right prosthetic knee. Mr. Morse's right knee
prosthetic joint was known to be infected in May 2009. Specifically, the
Orthopedic Consult Note Addendum, dated 5/18/2009, noted the following:

> 05/18/2009 ADDENDUM [Page 345]
> Pt's lab results returned.
> Right knee aspiration results. [Synovial fluid] WBC 27500 [27200] with
> 89% segs.
> Culture/gram stain [Synovial fluid] many WBC's no bacteria. No growth to
> date [Synovial fluid culture].
> ESR> 120 CRP 35 WBC [blood] normal.
>
> **Lab results suggest clinical chronic infected right TKA [total knee
> arthroplasty].**
> **Will discuss results with Dr. Sward for definitive treatment options.**
> **Pt [patient] will need stage one revision per current
> recommendations.**

Unfortunately, on 6/23/2009, Dr. Evans negligently concluded that Mr. Morse's
right knee prosthetic joint wasn't infected, because the synovial fluid culture
obtained on 5/14/2009 was negative for bacterial growth. Synovial fluid cultures
have a high false negative rate. 25% of synovial fluid cultures are falsely negative
with prosthetic joint infections.

Dr. Evans was not only negligent for referring Mr. Morse to follow-up with his
primary care physician, but he was also negligent for not prescribing any
antibiotics to Mr. Morse on 6/23/2009. Hence, Mr. Morse did not receive any
antibiotics for his right knee prostheic joint infection. As a result, the infection
progressed to such an extent that he not only had to have his leg amputated, but
he also nearly died from septic shock.

The negligence of Dr. Evans proximately caused Mr. Morse's right leg to be
amputated.

## COURSE OF TREATMENT

Please note, the MD ATTENDING NOTE, dated June 24, 2010, states "**His knee
has been known to be infected for over a year now…**"

This is clearly a case of gross negligence, which resulted in the near death of Mr.
Morse, as well as the loss of Mr. Morse's right leg. Dr. Evans fell well below the
standard of care on June 23, 2009, when he concluded that Mr. Morse



HERSHALL MORSE - PROOF OF NEGLIGENCE FOR FEDERAL TORT
CLAIM ARISING FROM NEGLIGENCE OF DR. EVANS ON JUNE 23, 2009

knee prosthetic joint wasn't infected because the synovial fluid culture was
negative.

Please note, the synovial fluid culture of the purulent synovial fluid obtained on
6/19/2010, prior to his surgery on 6/25/2010 when Mr. Morse had his leg
amputated due to the massive infection, was also negative for bacterial growth…

Please see the specific medical records that are referenced below. The following
medical records establish the medical negligence in this matter:

- According to the DISCHARGE SUMMARIES ADDENDUM, dated
  08/06/2010, [Page 213], "Mr. Morse is a 57 y/o gentleman with… hx
  [history of] crush injury to RLE [Right Lower Extremity] with R [Right] tib
  [tibia] repair 1/04, R TKA [Right Total Knee Arthroplasty] 3/05 and now s/p
  [status post] AKA [Above Knee Amputation] on right due to [massive]
  infection of the limb [right knee] with sepsis s/p shock with intubation…

- The OPERATION REPORT, dated 06/25/2010, [Page 1449], states the
  following:

  ATTENDING SURGEON: Richard P. Evans, M.D.
  ASSISTANT SURGEON: Dipit Sahu, M.D.

  PREOPERATIVE DIAGNOSIS: Infected total knee arthroplasty right limb
  POSTOPERATIVE DIAGNOSIS: Infected total knee arthroplasty right limb

  PROCEDURE PERFORMED: Above-knee amputation right side.

  FINDINGS: Infection found to be massive and spread widely, even to the
  intramedullary canal of the tibia and distally along the tibia with absence of
  erosion of the medial tibial wall metaphysis…

  HISTORY: The patient had a total knee arthroplasty… **He was seen by
  Dr, Evans 1 year back in May 2009** [actual date Mr. Morse was seen by
  Dr. Evans was June 23, 2009] **wherein he was advised to undergo a
  revision as he had loosening, failure and infection [NOT TRUE – Dr.
  Evans concluded on June 23, 2009 that Mr. Morse did not have an
  infection because the synovial culture obtained on 5/14/2009, was
  negative.** Please note, a negative culture does not rule out a prosthetic
  joint infection. As a mater of fact there is a high false negative rate with
  synovial cultures. 25% of synovial cultures are falsely negative. Dr. Evans
  should have known this.] of the TKA. **However, he was lost to followup**
  and did not turn up in clinic to us so his treatment was not followed by us
  as he did not report to us after May [2009] of last year. Please note, even
  his wife was not aware that he had avoided getting treated for this total
  knee infection since last year. However, he did show up after a year, this

HERSHALL MORSE - PROOF OF NEGLIGENCE FOR FEDERAL TORT
CLAIM ARISING FROM NEGLIGENCE OF DR. EVANS ON JUNE 23, 2009

June [2010] with a grossly infected-appearing knee joint. His knee joint
was then tapped and fluid was set for culture [and] cell count. The culture
turned out to be negative [THIS IS PROOF THAT NEGATIVE CULTURES
DO NOT RULE OUT A PROSTHETIC JOINT INFECTION], however, the
cell count was high, 164,000 cell count with a purulent-appearing fluid
[PUS]. **He was also determined to have an infected TKA...**

[PLEASE NOTE, MR. MORSE WAS "LOST TO FOLLOW-UP" BY THE
ORTHOPEDIC CLINC BECAUSE DR. EVANS, ON JUNE 23, 2009,
INCORRECTLY CONCLUDED THAT MR. MORSE DID NOT HAVE A
PROSTHETIC JOINT INFECTION. HENCE, DR. EVANS REFERRED
MR. MORSE TO FOLLOW-UP WITH HIS PRIMARY CARE PHYSICIAN.
DR. EVANS WAS UNEQUIVOCALLY NEGLIGENT FOR CONCLUDING
THAT MR. MORSE DID NOT HAVE A PROSTHETIC JOINT INFECTION
ON JUNE 23, 2009, WHEN DR. ARDOIN AND DR. SWARD HAD
PREVIOUSLY AND CORRECTLY CONCLUDED ON 5/14/2009, THAT
MR. MORSE DID INDEED HAVE A PROSTHETIC JOINT INFECTION.
DR. EVANS IS UNEQUIVOCALLY RESPONSIBLE FOR  MR. MORSE
NOT RECEIVING TIMELY ANTIBIOTIC TREATMENT OF HIS
PROSTHETIC JOINT INFECTION. PLEASE NOTE, NEITHER MR.
MORSE, NOR MRS. MORSE WERE AWARE THAT HE HAD A
PROSTHETIC  JOINT INFECTION, AS DR. EVANS, ON JUNE 23, 2009,
INCORRECTLY CONCLUDED THAT MR. MORSE DID NOT HAVE A
PROSTHETIC  JOINT INFECTION. ]

- The MD ATTENDING NOTE, dated June 24, 2010, [Page 1020], states
the following:

MD ATTENDING NOTE
DATE OF NOTE: JUNE 24, 2010 @10:00
AUTHOR: MCCOY, JAMES RALPH

Apparently there was some confusion this am regarding the urgency of
Mr. Morse's planned knee surgery. After talking with Medicine attending(s)
I learned that they do not feel that the surgery is an emergency and could
be done tomorrow without undue risk to [the life of ] this ptient. He is
indeed an ill individual and currently is on a dopamine drip [SECONDARY
TO SEPTIC SHOCK SECONDARY TO MASSIVE PROSTHETIC JOINT
INFECTION] and his urine output is minimal. As ill as he is, Dr. Sward and
I both agree that the better part of valor for him might be to perform an AK
[Above knee] amputation rather than stage 1 of a TKA revision. **His knee
has been known to be infected for over a year now...** Will discuss with
Dr. Evans who was originally planning to do the stage 1 revision and get
his input.

/es/ JAMES RALPH MCCOY MD

HERSHALL MORSE - PROOF OF NEGLIGENCE FOR FEDERAL TORT
CLAIM ARISING FROM NEGLIGENCE OF DR. EVANS ON JUNE 23, 2009

- The ORTHOPEDIC SURGRERY CONSULT Note, dated June 23, 2009, on pages 1371 and 1372 of the Medical Records, state the following:

ORTHOPEDIC SURGERY CONSULT
DATE OF NOTE: JUNE 23, 2009 @13:00
AUTHOR: EVANS, RICHARD P.
DATE OF EXAMINATION:  June 23, 2009

EXAM: The patient is a 56-year-old-male who has had five right knee operations… This includes primary knee replacement followed by arthroscopy followed by revision knee arthroplasty followed by arthroscopy followed by repeat revision arthroplasty. Patient states he has not had a painless day.

He also has a complex medical history of having pasteurella sepsis from a pet cat [The sepsis put Mr. Morse at high risk for having a prosthetic joint infection]…

Physical exam reveals grossly swollen, somewhat flexion contracture of the right knee of approximately 10 degrees. He has an extensively antalgic gait [limping secondary to pain] using a cane just to get by with short distances.

Physical exam also reveals the skin is intact…. There is no evidence or signs of infection [Please note, Mr. Morse's grossly swollen right knee joint was evidence of his right knee prosthetic joint infection]….

X-ray reveals complex revision total knee arthroplasty with long intramedullary tibial stem. It should be noted the patient does have pain on occasio at the end of the stem resembling "shin splints" [Please note, Mr. Morse's pain was secondary to the chronic infection, not shin splints].

Bone scan also shows increased uptake right knee consistent with infection versus loosening.

**Labs of the knee aspiration, however, reveal that he is culture negative [NEGATIVE CULTURES DO NOT RULE OUT PROSTHETIC JOINT INFECTIONS].** Although the CRP [>120] and sedimentation rate [35] are high the differential in the knee aspirate is only 56% [This is not accurate, as the WBC was 27,200 with 89% segs, not 56%], and we can likely attribute this to his renal failure and chronic medical conditions [WRONG. The elevated CRP, elevated sedimentation rate, and elevated WBC (27,200) with 89% segs were secondary to Mr. Morse's right knee prosthetic joint infection].

**Given the fact that he does not have clinical signs [WRONG], symptoms [WRONG], or culture positive results [NEGATIVE CULTURES DO NOT RULE OUT PROSTHETIC JOINT INFECTIONS], I think we can safely say he has got chronic loosening of his right knee [WRONG. MR. MORSE HAD A PROSTHETIC JOINT INFECTION AS DR. SWARD AND DR. ARDOIN HAD CORRECTLY CONCLUDED ON 5/14/09]. His clinical course is significantly consistent with this having had chronic pain consistently throughout his surgical course and not having an onset of pain [WRONG] or any other sing or symptom [WRONG] or positive culture that would be consistent with an infection [[NEGATIVE CULTURES DO NOT RULE OUT PROSTHETIC JOINT INFECTIONS].**

Plan at this point is to refer him back to his Primary Care physician. If he is going back on dialysis, he will ultimately need clearance in order to proceed with revision [of] right total knee arthroplasty which he will need. He will likely need an extensive revision knee arthroplasty, and my preference would be a Legion Smith and Nephew replacement with significant augmentation.

He will return once cleared for elective revision right total knee arthroplasty surgery.

/es/ Richard P. Evans, M.D.

[DR. EVANS IS UNEQUIVOCALLY RESPONSIBLE FOR THE FACT THAT MR. MORSE WAS "LOST TO FOLLOWUP", AS DR. EVANS WAS EGREGIOUSLY NEGLIGENT FOR INCORRECTLY CONCLUDING THAT MR. MORSE'S PROSTHETIC JOINT WASN'T INFECTED ON 6/23/2009]

- On 5/14/09, Gregory T. Ardoin, MD, had been consulted to evaluate Mr. Morse for "Right knee pain status post total knee arthroplasty". Dr. Ardoin was a fifth year orthopedic resident (PGY5) at that time. Please see the Orthopedic Surgery Consult, dated May 14, 2009, on Pages 343 and 344 of the VA Medical Records, which states the following:

ORTHOPEDIC SURGERY CONSULT
DATE OF NOTE; May 14, 2009, @13:45
AUTHOR: ARDOIN, GREGORY T

REASON FOR VISIT: Right knee pain status post total knee arthroplasty

HISTORY: The patient is a 56-year-old male… Patient had a history of right tibial plateau fracture and underwent ORIF [in 2004]… He subsequently developed severe degenerative arthritis and… [had] total

HERSHALL MORSE - PROOF OF NEGLIGENCE FOR FEDERAL TORT
CLAIM ARISING FROM NEGLIGENCE OF DR. EVANS ON JUNE 23, 2009

knee arthroplasty… in 2005 with a long stem tibial implant… Patient states
he has never really had pain relief since then. He always had pain and
swelling in the right lower extremity especially about the right knee. Denies
any feveres or chills, but the pain has always been present. He has never
been worked up for any type of infection or loosening…

[…]

X-rays were reviewed from last month reveal overall well-positioned
implant with a long tibial stem with no major evidence of loosening on x-
ray.

IMPRESSION: Right knee pain status post total knee arthroplasty for
posttraumatic arthritis…with incomplete pain relief. Patient also has a
history of sepsis over the past year which could have led to infection in the
knee.

I have explained these findings to the patient and offered workup for
infection with CBC, CRP, sed rate, aspiration of the knee with analysis of
synovial cultures, sensitivities, cell count. We will also get a bone scan to
rule out any loosening or evidence of infection. We will have him come
back to clinic in two weeks. I discussed these findings with Dr. Henderson
as well as Dr. Sward who both were in clinic today. They agree with my
plan. We will see him back in a couple of weeks to review these tests.

05/18/2009 ADDENDUM [Page 345]
Pt's lab results returned.
Right knee aspiration results. **[Synovial fluid] WBC 27500 [27200] with
89% segs.**
Culture/gram stain [Synovial fluid] many WBC's no bacteria. No growth to
date [Synovial fluid culture].
ESR> 120 CRP 35 WBC [blood] normal.

**Lab results suggest clinical chronic infected right TKA [total knee
arthroplasty].**
**Will discuss results with Dr. Sward for definitive treatment options.**
**Pt [patient] will need stage one revision per current
recommendations.**

/es/ [Electronic Signature] GREGORY T ARDOIN PGY5 MD

- LAB RESULTS [Page 151]
  SYNOVIAL FLUID
  b 05/14/2009 16:26 ORANGE CLOUDY 27200.0 [WBC]

- LAB RESULTS [Page 189]

HERSHALL MORSE - PROOF OF NEGLIGENCE FOR FEDERAL TORT
CLAIM ARISING FROM NEGLIGENCE OF DR. EVANS ON JUNE 23, 2009

05/14/2009 16:26 SYNOVIAL FLUID SEGS: 89

- LAB RESULTS [Page 201]
  MICROBIOLOGY
  Collection Sample: SYNOVIAL FLUID
  Collection Date: May 14, 2009 16:27
  Test(s) Ordered: CULTURE
  BACTERIOLOGY FINAL REPORT => May 17, 2009
  NO GROWTH IN 24 HOURS, FINAL REPORT TO FOLLOW
  NO GROWTH IN 48 HOURS, FINAL REPORT TO FOLLOW
  NO GROWTH IN 72 HOURS

Please see the following medical literature which establish the standard of care in
this matter:

- **Laboratory Findings for Infected Total Knee Replacement**
  http://www.wheelessonline.com/ortho/infected_tkr_labs

  - aspiration: gram stain, cell count & culture:
      - most accurate method of dx, and is required prior to all revisions;
      - synovial fluid analysis:
          - white cell count greater than 2,000/mm may indicate
          sepsis, when the majority of cells are PMN's;
  - cultures:
      - false-negatives (see biofilm formation)
          **- 25% false neg result w/ aspiration rate means that
          positive cultures often will be isolated only after
          components are removed & tissue is cultured;**

- **Synovial fluid leukocyte count and differential for the diagnosis of
  prosthetic knee infection**
  http://www.ncbi.nlm.nih.gov/pubmed/15465503?dopt=Abstract

  Abstract
  PURPOSE:

  Criteria for the interpretation of synovial fluid are well established for
  native joint disorders but lacking for the evaluation of prosthetic joint
  failure. Our aim was to define cutoff values for synovial fluid leukocyte
  count and neutrophil percentage for differentiating aseptic failure and
  prosthetic joint infection.
  METHODS:

  We performed a prospective study of 133 patients in whom synovial fluid
  specimens were collected before total knee arthroplasty revision between

HERSHALL MORSE - PROOF OF NEGLIGENCE FOR FEDERAL TORT
CLAIM ARISING FROM NEGLIGENCE OF DR. EVANS ON JUNE 23, 2009

January 1998 and December 2003. Patients with underlying inflammatory
joint disease were excluded.
RESULTS:

Aseptic failure was diagnosed in 99 patients and prosthetic joint infection
was diagnosed in 34 patients. The synovial fluid leukocyte count was
significantly higher in patients with prosthetic joint infection (median, 18.9
x 10(3)/microL; range, 0.3 to 178 x 10(3)/microL) than in those with
aseptic failure (median, 0.3 x 10(3)/microL; range, 0.1 to 16 x
10(3)/microL; P <0.0001); the neutrophil percentage was also significantly
higher in patients with prosthetic joint infection (median [range], 92% [55%
to 100%] vs. 7% [0% to 79%], P <0.0001). A leukocyte count of >1.7 x
10(3)/microL had a sensitivity of 94% and a specificity of 88% for
diagnosing prosthetic joint infection; a differential of >65% neutrophils had
a sensitivity of 97% and a specificity of 98%. Staphylococcus aureus was
the only pathogen associated with leukocyte counts >100 x 10(3)/microL.
CONCLUSION:

A synovial fluid leukocyte differential of >65% neutrophils (or a leukocyte
count of >1.7 x 10(3)/microL) is a sensitive and specific test for the
diagnosis of prosthetic knee infection in patients without underlying
inflammatory joint disease.

[PLEASE NOTE, ON MAY 18, 2009, MR. MORSE'S SYNOVIAL FLUID
HAD 27,200 WBCs WITH A DIFFERNETIAL OF 89%
SEGS/NEUTROPHILS].

- **Analysis of Synovial Fluid in Culture-negative Samples of Suspicious
  Periprosthetic Infections**
  http://www.orthosupersite.com/view.aspx?rid=70289

Abstract

Synovial fluid analysis can help to rule out a periprosthetic infection. The
goal of this study was to evaluate the prognostic significance of synovial
fluid suspicious for a periprosthetic infection given the synovial leukocyte
count and percent of neutrophils.

From August 2006 to November 2008, patients who had synovial fluid
aspirated for painful knees and elevated C-reactive protein levels after
total knee arthroplasty but revealed no growth of any microorganism were
retrospectively evaluated by medical record review. Mean follow-up period
was 827.7±250.6 days from the date of joint aspiration results. The
optimal cut-off values for synovial leukocyte counts and percent
neutrophils were determined using receiver operating characteristic
curves.

HERSHALL MORSE - PROOF OF NEGLIGENCE FOR FEDERAL TORT CLAIM ARISING FROM NEGLIGENCE OF DR. EVANS ON JUNE 23, 2009

From a total of 56 patients, 14 were classified as having poor results. The remaining 42 patients had an uneventful clinical course with a stable prosthesis on radiographs without specific therapy during the follow-up period. The receiver operating characteristic curve showed that a synovial leukocyte count of 3600/uL had an 86% sensitivity and 79% specificity; with 89% synovial neutrophils, the sensitivity was 72% and specificity 62%.

The synovial fluid leukocyte count and percent neutrophils were significant predictors of outcome in patients with cultures that were negative but suspicious for periprosthetic infections.

Total knee arthroplasty (TKA) is the primary surgical treatment for patients with degenerative osteoarthritis of the knee. The number of these procedures has been increasing annually due to the gradual aging of society. However, once infection occurs, due to the presence of a biofilm that can form around the prosthesis, effective treatment cannot be provided with the use of antibiotics alone. A 2-stage revision—which is performed following surgical drainage—the removal of the prosthesis, and the use of antibiotics for a sufficient period is the standard treatment approach in such patients.1 However, because knee joint symptoms associated with periprosthetic infections are nonspecific, diagnosing an infection can be difficult in patients who report postoperative pain. A variety of clinical, histopathological, and radiological examinations are therefore needed for patient evaluation.2

Serological tests indicating inflammatory responses, such as the erythrocyte sedimentation rate or C-reactive protein, have a high sensitivity. However, these markers are also increased in inflammation associated with other organs or a nonspecific inflammation as well as a periprosthetic infection. Therefore, to confirm the diagnosis and to determine the optimal treatments, cultures for microorganisms found in fluid aspirated from a prosthetic joint are standard procedures.3 However, if antibiotics were started prior to the joint aspiration or an infection was present due to a microorganism for which the experimental culture identification is difficult, the synovial fluid culture can be reported to be negative. In these cases, because a confirmatory diagnosis of infection has become more difficult, other factors are used to assess the presence of an infection, such as pus formation, a sinus tract, and histopathological findings of neutrophil infiltration around the joint prosthesis. However, a sinus tract is formed only in cases with chronic periprosthetic infections and histopathology requires open surgery. Therefore, the confirmation of an infection can be difficult.4 To confirm the presence of a periprosthetic infection, most studies of synovial fluid analysis have been based on a

HERSHALL MORSE - PROOF OF NEGLIGENCE FOR FEDERAL TORT
CLAIM ARISING FROM NEGLIGENCE OF DR. EVANS ON JUNE 23, 2009

group of patients studied immediately before revision TKA; the findings
show leukocyte counts of 1760 cells/uL with 65% neutrophils.5

No study in the literature evaluates the outcome of patients with synovial
fluid aspiration findings of prosthetic joints with negative cultures from 2
months to 1 year after the procedure. Therefore, we studied the prognostic
significance of the synovial fluid leukocyte count and percent neutrophils
in culture-negative samples.

Discussion

The diagnostic criteria used for periprosthetic infections is complicated by
the inability to distinguish septic loosening due to chronic infections that
gradually progress following surgery from aseptic loosening caused by
immune responses associated with metal particles and polyethylene wear
debris from the joint prosthesis and the various inflammatory cytokines
released from the space between the inserted cement and tissue.6
Trampuz et al 7 reported that in many cases previously assumed to be
aseptic loosening, chronic infections were present although the cultures
were negative for growth. They found that in such cases, after removal of
the joint prosthesis, placement in a bath of aseptic saline with
ultrasonographic oscillation frequently revealed the presence of
microorganisms.

Therefore, many cases with instability of the joint prosthesis may be due
to chronic infections caused by microorganisms with low pathogenicity that
were inoculated during surgery. The diagnosis of a periprosthetic infection
can be made if at least 3 of the following 5 criteria are present: (1)
abnormal serology (erythrocyte sedimentation rate >30 mm/hour, C-
reactive protein >1 mg/dL); (2) strong clinical and radiographic suspicion
for a periprosthetic infection such as periosteal elevation, focal osteolysis,
hot and swollen joint, or presence of a draining sinus; (3) a positive culture
from the joint aspirate; (4) evidence of purulence during the subsequent
surgical intervention; and (5) a positive intraoperative culture.2 However,
**no diagnostic criteria are available for patients with negative culture
results.**

In a limited number of cases with gross discharge of pus, the presence of
>5 neutrophils per high power field on histopathology and the formation of
a sinus tract in the skin, attempts have been made to classify culture-
negative periprosthetic infections. **The reasons for culture failure are
presumed to include the use of antibiotics prior to sample collection,
anaerobic microorganism difficult to culture, biofilm formation in
patients with chronic infections, or a difference in the proliferative
rate and metabolism of the microorganism from the original
nutritional status.**

HERSHALL MORSE - PROOF OF NEGLIGENCE FOR FEDERAL TORT
CLAIM ARISING FROM NEGLIGENCE OF DR. EVANS ON JUNE 23, 2009

**In patients with periprosthetic infections, treatment with antibiotics alone may not be sufficient in cases where biofilm has formed. In such cases, the standard treatment regimen is 2-stage revision surgery, revision TKA following the removal of the joint prosthesis, and antibiotic treatment. The treatment success for this approach has been reported to be approximately 87%.** Due to the burden of long-term hospitalization and 2 surgical procedures, a 1-stage revision surgery where a new joint prostheses is inserted on the same day of removal is often attempted. In cases without chronic infections (ie, where acute infections occurred mainly due to hematological spread), to avoid revision replacement surgery, first surgical drainage and debridement of inflammatory tissue is performed, leaving the joint prostheses in place, with intravenous antibiotic therapy, followed by several months of oral antibiotics. Such treatment regimens may be useful for the cases where rigorous criteria were applied, where surgery was performed 48 hours before the onset of infections and the microorganisms involved were not multidrug-resistant, and where oral antibiotics were effective.1

To date, however, in clinical cases with acute infections following surgery occurring within 2 months postoperatively, no treatment guidelines have been established. Within a 2-month time frame, it is difficult to distinguish between deep and superficial infections. In cases with periprosthetic infections occurring in the deep portion, surgical treatment is mandatory due to the formation of biofilm; however, in cases where only the soft tissue around the wound was invaded without deep infection, improvement can generally be expected with the use of medical treatments. Therefore, the ability to rule out a deep infection is important.

Unlike the C-reactive protein that can be repeatedly measured by simple blood sampling, a joint aspirate cannot be performed without reasonable indications following TKA. In the presence of a joint prosthesis, intra-articular inoculation of superficial microorganisms can occur through the syringe needle. A synovectomy is concurrently performed in most TKA procedures. Therefore, the early-stage formation of synovial fluid can occur not only in the normal synovium but also in the adjacent tissues to the joint where various types of cells are present. Immediately postoperatively, it is unavoidable to observe inflammatory tissue fluid and various hematological components. No reports on the postoperative period describe the natural history of the inflammatory response and its return to baseline. Therefore, there are no standard measures of intra-articular leukocyte counts and the percent of neutrophils following TKA. Based on the results of the joint aspiration performed immediately before revision TKA, cutoff values for the prediction of infections have been established. However, the values for the first 2 months postoperatively have not been established. Therefore, it is unclear how long it takes for

the leukocyte counts and percent neutrophils in the joint to return to
baseline or the patterns of changes following TKA.

In our study, in patients who reported postoperative pain, had an elevated
C-reactive protein level within 1 year postoperatively, and had a joint
aspiration, the findings of the joint aspiration and prosthesis survival were
evaluated only in the culture-negative cases. Leukocyte counts and the
percent of neutrophils were 3800 cells/uL and 89%, much higher than the
values used for previous criteria (1700 cells/uL, 65%). These findings may
be because this study enrolled patients who underwent surgery within 2
months. In addition, these findings are not conclusive due to the small
number of patients evaluated. However, in cases where the diagnosis of
an infection is made based on the previous criteria of a lower leukocyte
count and percent neutrophils for only joint aspiration or in cases where
revision surgery was not performed, there is a risk of false positive results.

For the choice of initial treatment strategy, conservative treatment rather
than surgical treatment was usually the standard approach to treatment in
most cases. However, in cases with inflammation, elevation of C-reactive
protein level, edema, redness, pain, and a loosening of the joint prosthesis
on radiographs, revision surgery is usually required. In some cases where
patients refused revision surgery despite the signs of infection, only a
follow-up evaluation could be performed. A cause of culture-negative
periprosthetic infections may be the use of antibiotics prior to joint
aspiration. In addition, in cases where a periprosthetic infection developed
into a chronic infection due to the formation of biofilm, based on the
characteristics of the microorganisms present in the biofilm, different from
the free status of other microorganisms, the metabolism and proliferation
are observed to be sluggish.9 The number of microorganisms in the joint
fluid may be small, and in some cases identification of fungi or anaerobic
bacterial strains can be difficult in culture.

[…]

**In cases with acute infections following a TKA, for the preservation
of a joint prosthesis, debridement and appropriate antibiotic
treatment are considered for early intervention.** However,
consideration of additional surgical treatment regimens, as well as
diagnostic criteria for infections in culture-negative cases, require the
analysis of a joint aspiration and long-term follow-up.

- **Functional Ability After Above-the-knee Amputation for Infected
  Total Knee Arthroplasty**
  http://www.springerlink.com/content/5083v814478k5103/

Abstract

## HERSHALL MORSE - PROOF OF NEGLIGENCE FOR FEDERAL TORT CLAIM ARISING FROM NEGLIGENCE OF DR. EVANS ON JUNE 23, 2009

Background

Prosthetic joint infection is an uncommon but serious complication of total knee arthroplasty (TKA). Control of infection after TKA is not always possible, and the resolution of infection may require an above-knee amputation (AKA).

Questions/purposes

The purpose of this study was to determine the etiology of AKA and the functional outcomes of AKA after infected TKA.

Methods

We retrospectively reviewed 35 patients who underwent AKA after an infected TKA. The amputations were performed an average of 6 years (range, 21 days to 24 years) after primary TKA. There were 19 females and 16 males with a mean age of 62 years (range, 26–88 years). Patient demographic information, comorbidities, surgical treatments, cultures, and culture sensitivities were recorded. Complications and functional status, including SF-12 and activities of daily living questionnaires, after AKA were also studied. The minimum followup was 7 months (mean, 39 months; range, 7–96 months).

Results

Two patients died secondary to cardiac arrest and 13 more died during the followup period of unrelated causes. Nine patients required irrigation and débridement for nonhealing wounds after AKA and two patients had repeat AKA for bony overgrowth. Of the 14 patients fitted for prostheses, eight were functionally independent outside of the home. Patients fitted with a prosthesis had higher mean activities of daily living scores (58 versus 38) and also tended to be younger with fewer comorbidities than those who were not fitted with a prosthesis.

Conclusions

We found low functional status in living patients with an AKA after infection with only half of the patients walking after AKA.

### CONCLUSION

There is no doubt Dr. Evans committed medical malpractice on June 23, 2009 resulting in the loss of veteran Morse's leg.

# Consult Requests

infection with CBC, CRP, sed rate, aspiration of the knee with
analysis of synovial fluid with cultures, sensitivities, cell
count. We will also get a bone scan to rule out any loosening
or evidence of infection. We will have him come back to clinic
in two weeks. I discussed these findings with Dr. Henderson as
well as Dr. Sward who both were in clinic today. They agree
with my plan. We will see him back in a couple of weeks to
review these tests.


ASR:Infoprogroup
D:  05/14/09@1403                         T: 05/14/09
INFOPRO/800502/JOB#:358371


/es/ GREGORY T ARDOIN
PGY5 MD
Signed: 05/18/2009 05:29


05/18/2009 ADDENDUM                    STATUS: COMPLETED
Pt's lab results returned.
Right knee aspiration results. WBC 27500 with 89%segs.
Culture/gram stain  many WBC's no bacteria. no growth to date.
ESR >120 CRP 35 WBC normal.

Lab results sugest clinical chronic infected right TKA.
will discuss results with Dr. Sward for definitive treatment options.
pt will need stage one revision TKA per current recommendations.

/es/ GREGORY T ARDOIN
PGY5 MD
Signed: 05/18/2009 05:43

Receipt Acknowledged By:
05/18/2009 06:28        /es/ DAVID T SWARD
                        STAFF SURGEON
=================================================================
=========================== END =================================


Current PC Provider:   BURNHAM,WILLIAM W
Current PC Team:       FIRM A
Current Pat. Status:   Outpatient
Primary Eligibility:        NSC

Order Information
To Service:          PHARMACY ERYTHROPOIETIN/DARBEPOETIN APPROVAL
From Service:        LR RENAL APN SP1
Requesting Provider: HILDEBRAND,CYNTHIA L

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012                  Printed at CENTRAL ARKANSAS HCS
429022249

# Discharge Summaries

Printed On Aug 24, 2010

```
2)    GABAPENTIN 300MG CAP TAKE ONE CAPSULE BY MOUTH THREE    ACTIVE
         TIMES A DAY
3)    OMEPRAZOLE 20MG SA CAP,EC TAKE ONE CAPSULE BY MOUTH      ACTIVE
         TWICE A DAY FOR STOMACH


      Active Non-VA Medications                              Status
=================================================================
1)   Non-VA MULTIVITAMIN CAP/TAB 1 TABLET MOUTH EVERY DAY    ACTIVE
2)   Non-VA Non-VA Medication Assessment Done                ACTIVE
         MISCELLANEOUS  MOUTH
```

5 Total Medications
Discharge diet: Low Cholesterol, ADA 2000 KCal

Discharge activities/limitations: as per PT recommendations


Specific date to return to work: N/A



/es/ STEPHANIE PEREIRA
MD, PGY 1
Signed: 08/03/2010 11:00

/es/ ASHUTOSH M. SHUKLA

Cosigned: 08/13/2010 09:14

Receipt Acknowledged By:
08/03/2010 12:01        /es/ WILLIAM W BURNHAM
                           MD   54910


08/06/2010 ADDENDUM                  STATUS: COMPLETED
Patient admitted to 3C-1E rehab on 7-8-201 following R AKA for rehabilitation.

Mr. Morse is a 57 y/o gentleman with multiple comorbidities including HTN, CKD
stage III, Cirrhosis, Anemia, Obesity, GERD, CLBP, Vit D deficiency, DJD,
restless leg, hx migraines,hx hyponatremia, hx heavy ETOH, hx crush injury to
RLE with R tib repair 1/04, R TKA 3/05 and now s/p AKA on right due to infection
of the limb with sepsis s/p shock with intubation. Patient recieved a course of
abx per ID recs for osteomylitis of R AKA. Mr. Morse was alert and pleasant on
admission. He denied pain and was in no distress. On physical exam, he was noted
to have significant oral thrush for which he was recieving Lidocaine mouthwash
and bland diet. Ensure added to meals and patient encouraged to ask for it
between meals as desired. Patient with large X shaped incision on the right AKA
with staples and a few steristrips in place. A fair amount of serous discharge
was noted both on dressing and actively at incision line, mostly distally.

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
429022249

VISTA Electronic Medical Documentation


Printed at CENTRAL ARKANSAS HCS

# Surgical Information

```
-----------------------------------------------------------------
                        OPERATION REPORT
-----------------------------------------------------------------
   LOCAL TITLE: OPERATION REPORT
STANDARD TITLE: OPERATIVE REPORT
   DICT DATE: JUN 25, 2010          ENTRY DATE: JUN 25, 2010@13:10:26
     SURGEON: SAHU,DIPIT             ATTENDING: EVANS,RICHARD P
     URGENCY: routine                  STATUS: COMPLETED
     SUBJECT: Case #: 181983
```

ATTENDING SURGEON:  Richard P. Evans, M.D.

ASSISTANT SURGEON:  Dipit Sahu, M.D.

PREOPERATIVE DIAGNOSIS:  Infected total knee arthroplasty right limb.

POSTOPERATIVE DIAGNOSIS:  Infected total knee arthroplasty right limb.

PROCEDURE PERFORMED:  Above-knee amputation right side.

ESTIMATED BLOOD LOSS:  1800 ml.

SPECIMEN:  Synovium tissue sent for biopsy and culture.

FINDINGS:  Infection found to be massive and spread widely, even to the intramedullary canal of the tibia and distally along the tibia with absence or erosion of the medial tibial wall metaphysis.  Hypertrophic synovium.  The patellar tendon was also inflamed.

HISTORY:  The patient has had a total knee arthroplasty somewhere outside and was subsequently also revised for the same multiple times.  He was seen by Dr. Evans 1 year back in May 2009 wherein he was advised to undergo a revision as he had loosening, failure and infection of the TKA.  However, he was lost to followup and did not turn up in the clinic to us so his treatment was not followed by us as he did not report to us after May of last year. Please note, even his wife was not aware that he had avoided getting treated for this total knee infection since last year. However, he did show up after a year, this June, with a grossly infected-appearing knee joint.  His knee joint was then tapped and fluid was sent for culture cell count.  The culture turned out to be negative, however, the cell count was high, 164,000 cell count with a purulent-appearing fluid.  He was also determined to have an infected TKA.  He was scheduled to undergo

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
429022249

**VISTA Electronic Medical Documentation**

Printed at CENTRAL ARKANSAS HCS

# Progress Notes

pressure ulcers.
  Provide patient/caregiver education regarding treatment plan for
  pressure ulcers.
  Teach patient/caregiver importance of changing position frequently for
  pressure ulcer prevention.
Pressure-Redistribution Measures
  Encourage small, frequent position changes
  Turn and reposition every 2 hours while in bed, using pillows to
  separate pressure areas
  Elevate heels using pillows or foam blocks
Maximize Mobilization
  Encourage activity as tolerated
Manage Moisture
  Maintain clean and dry skin
Manage Nutrition
  Provide or encourage oral care as needed
  Monitor fluid/food intake
Reduce Friction and Shear
  Keep head of bed at or below 30 degrees when not eating


/es/ JEREMY S GARNER
RN
Signed: 06/24/2010 14:27

---

  LOCAL TITLE: MD ATTENDING
STANDARD TITLE: ATTENDING NOTE
DATE OF NOTE: JUN 24, 2010@10:00      ENTRY DATE: JUN 24, 2010@10:00:35
     AUTHOR: MCCOY,JAMES RALPH    EXP COSIGNER:
     URGENCY:                      STATUS: COMPLETED

Apparently there was some confusion this am regarding the urgency of Mr. Morse's
planned knee surgery.  After talking with the Medicine attending(s) I learned
that they do not feel that the surgery is an emergency and could be done
tomorrow without undue risk to this patient.  He is indeed an ill individual and
currently is on a dopamine drip and his urine output is minimal.  As ill as he
is, Dr. Sward and I both agree that the better part of valor for him might be to
perform an AK amputation rather than stage 1 of a TKA revision.  His knee has
been known to be infected for over a year now.  The suspected reason for his
"code" yesterday by the medicine service is that of either an air embolism or
possibly a PE.  Will discuss with Dr. Evans who was originally planning to do
the Stage 1 revision and get his input.

/es/ JAMES RALPH MCCOY
MD
Signed: 06/24/2010 10:08
  LOCAL TITLE: RENAL CONSULT RESULTS

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS   72012
429022249

**VISTA Electronic Medical Documentation**

Printed at CENTRAL ARKANSAS HCS

# Progress Notes

STANDARD TITLE: NURSE PRACTITIONER NOTE
DATE OF NOTE: JUN 29, 2009@15:03      ENTRY DATE: JUN 29, 2009@15:03:06
        AUTHOR: LINDSEY,JUDY L      EXP COSIGNER:
        URGENCY:                    STATUS: COMPLETED

pre/liver review labs ordered.

/es/ JUDY L LINDSEY 257-5784
REGISTERED NURSE PRACTITIONER
Signed: 06/29/2009 15:03

---

    LOCAL TITLE: ORTHOPEDICS CONSULT RESULTS
    STANDARD TITLE: ORTHOPEDIC SURGERY CONSULT
    DATE OF NOTE: JUN 23, 2009@13:00      ENTRY DATE: JUN 23, 2009@15:15:17
        AUTHOR: EVANS,RICHARD P      EXP COSIGNER:
        URGENCY:                    STATUS: COMPLETED


DATE OF EXAMINATION:   June 23, 2009.

EXAM:  The patient is a 56-year-old male who has had five right
knee operations done apparently by Dr. Lowery Barnes per the patient.
He is not a good historian. This includes primary knee replacement followed by
arthroscopy followed by revision knee arthroplasty followed by arthroscopy
followed by a repeat revision arthroplasty.  Patient states he
has never had a painless day.

He also has a complex medical history of having had pasteurella
sepsis apparently from a pet cat that he has.  This shut down
his kidneys at one point with chronic sepsis.  He has been told
today that his renal function is so poor that he is likely going
to need to go on dialysis.  He states also that his renal
physicians will not allow any surgery given the shape that he is
in.

Physical exam reveals grossly swollen, somewhat flexion
contracture of the right knee of approximately 10 degrees.  He
has an extensively antalgic gait using a cane just to get by
with short distances.

Physical exam also reveals the skin is intact.  It is
neurovascularly intact.  There is no evidence or signs of
infection.  Alert and oriented times three and appears to be
relatively intelligent regarding his current condition.

X-ray reveals complex revision total knee arthroplasty with long
intramedullary tibial stem.  It should be noted the patient does

---

**PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)**

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
429022249

**VISTA Electronic Medical Documentation**

Printed at CENTRAL ARKANSAS HCS

# Progress Notes

have pain on occasion at the end of the stem resembling "shin splints."

Bone scan also shows increased uptake right knee consistent with infection versus loosening.

Labs of the knee aspiration, however, reveal that he is culture negative. Although the CRP and sedimentation rate are high, the differential in the knee aspirate is only 56%, and we can likely attribute this to his renal failure and chronic medical conditions.

Given the fact that he does not have clinical signs, symptoms, or culture positive results, I think we can safely say he has got chronic loosening of his right knee. His clinical course is significantly consistent with this having had chronic pain consistently throughout his surgical course and not having an onset of pain or any other sign or symptom or positive culture that would be consistent with an infection.

Plan at this point is to refer him back to his Primary Care physician. If he is going back on dialysis, he will ultimately need clearance in order to proceed with revision right total knee arthroplasty which he will need. He will likely need an extensive revision knee arthroplasty, and my preference would be a Legion Smith and Nephew knee replacement with significant augmentation.

He will return once cleared for elective revision right total knee arthroplasty surgery.


ASR:Infoprogroup
D:   06/23/09@1319                    T: 06/23/09
800635/JOB#: 394029

/es/ Richard P. Evans, M.D.
Orthopedic Surgery - Adult Reconstruction
Signed: 06/24/2009 07:22


LOCAL TITLE: ORTHOPEDIC SURGERY
STANDARD TITLE: ORTHOPEDIC SURGERY NOTE
DATE OF NOTE: JUN 23, 2009@13:20      ENTRY DATE: JUN 23, 2009@13:20:33
      AUTHOR: EVANS,RICHARD P      EXP COSIGNER:
      URGENCY:                          STATUS: COMPLETED

      *** ORTHOPEDIC SURGERY Has ADDENDA ***

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS 72012                 Printed at CENTRAL ARKANSAS HCS
429022249

# Consult Requests

PRINTED TO PT61180SPRT  04/22/09 08:35
  SCHEDULED                04/22/09 13:17       HILDEBRAND,CYNTHI   REEL,LESLIE K
ORTHO GENERAL NC LR (SPEC I) Consult Appt. on 05/21/09 @ 14:30
knee

  STATUS CHANGE            05/01/09 15:42       HILDEBRAND,CYNTHI   REEL,LESLIE K
ORTHO GENERAL NC LR (SPEC I) Appt. on 05/21/09 @ 14:30 was cancelled by the Patient.
Remarks: moved up

  SCHEDULED                05/01/09 15:49       REEL,LESLIE K       REEL,LESLIE K
5-14-09

  ADDED COMMENT            05/07/09 12:51       REEL,LESLIE K       REEL,LESLIE K
pt. had white county med center send records. The only op note sent was
for an open reduction and internal fixation with bone grafting.

  ADDED COMMENT            05/12/09 11:20       REEL,LESLIE K       REEL,LESLIE K
pt. had records faxed from Ark. specialty orthopedics, again no op report
regarding TKA was included

  ADDED COMMENT            05/14/09 12:43       REEL,LESLIE K       REEL,LESLIE K
received more information from Searcy Medical Center, still no op report
regarding TKA

  INCOMPLETE RPT           05/15/09 06:57       ARDOIN,GREGORY T    WHITE,DEBORAH S
    Note# 20492022
  COMPLETE/UPDATE          05/18/09 05:29       ARDOIN,GREGORY T    ARDOIN,GREGORY T
    Note# 20492022
  ADDED COMMENT            05/18/09 14:50       REEL,LESLIE K       REEL,LESLIE K
received an op report today of his hardware removal and TKA surgery. I
have forwarded to APN for entry.


Note: TIME ZONE is local if not indicated

----------------------------------------------------------------------

  LOCAL TITLE: ORTHOPEDICS CONSULT RESULTS
STANDARD TITLE: ORTHOPEDIC SURGERY CONSULT
DATE OF NOTE: MAY 14, 2009@13:45     ENTRY DATE: MAY 15, 2009@06:57:19
    AUTHOR: ARDOIN,GREGORY T       EXP COSIGNER:
    URGENCY:                       STATUS: COMPLETED

  *** ORTHOPEDICS CONSULT RESULTS Has ADDENDA ***

REASON FOR VISIT:  Right knee pain status post total knee
arthroplasty.

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
429022249

**VISTA Electronic Medical Documentation**

Printed at CENTRAL ARKANSAS HCS

# Consult Requests

HISTORY:  The patient is a 56-year-old male with liver and
kidney disease.  Patient had a history of right tibial plateau
fracture and underwent ORIF by Dr. McCoy early-2000s.  He
subsequently developed severe degenerative arthritis and was
seen by Dr. Barnes here in Little Rock who offered him right
total knee arthroplasty.  This was performed back in 2005 with a
long stem tibial implant.  I do not have any other records other
than that.  Patient states he has never really had pain relief
since then.  He always had pain and swelling in the right lower
extremity especially about the right knee.  Denies any fevers or
chills, but the pain has always been present.  He has never been
worked up for any type of infection or loosening.  He also
complains of the fact that he cannot really get his knee out
straight.

PROBLEMS:  Kidney disease anemia, anemia ,low back pain,
cellulitis in the past, hypocalcemia, hyponatremia,
hypercholesteremia, LFTs gout.

The patient states he was hospitalize over the past year for
severe bacterial infection which was in his blood.  He states he
thinks it injured his kidneys.

EXAM:  He is an extremely overweight white male in no acute
distress.  Comes in today in a wheelchair.  Very pleasant during
today's examination.  He was alert and oriented x5.

On examination of the right lower extremity, he has good hip
range of motion.  His knee range of motion is from about -25 to
30 degrees to 130 degrees.  He cannot fully extend the knee.
Like I said he has about a 30 degree flexor contracture.  The
knee is stable to varus and valgus stress, anterior posterior
stress.  He has pitting edema about the right lower extremity,
none on the left lower extremity.  He has a negative Homan sign.
He has palpable pulses.  The foot skin is intact.  He is able to
flex his tendon toes as well as his foot.

X-rays were reviewed from last month reveal overall well-
positioned implant with a long tibial stem with no major
evidence of loosening on x-ray.

IMPRESSION:  Right knee pain status post total knee arthroplasty
for posttraumatic arthritis done in 2004 with incomplete relief
of pain.  Patient also has a history of sepsis over the past
year which could have led to infection in the knee.

I explained these findings to the patient and offered workup for

---

**PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)**

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
429022249

**VISTA Electronic Medical Documentation**

Printed at CENTRAL ARKANSAS HCS

# Consult Requests

infection with CBC, CRP, sed rate, aspiration of the knee with
analysis of synovial fluid with cultures, sensitivities, cell
count. We will also get a bone scan to rule out any loosening
or evidence of infection. We will have him come back to clinic
in two weeks. I discussed these findings with Dr. Henderson as
well as Dr. Sward who both were in clinic today. They agree
with my plan. We will see him back in a couple of weeks to
review these tests.


ASR:Infoprogroup
D:  05/14/09@1403                    T: 05/14/09
INFOPRO/800502/JOB#:358371

/es/ GREGORY T ARDOIN
PGY5 MD
Signed: 05/18/2009 05:29

05/18/2009 ADDENDUM                STATUS: COMPLETED
Pt's lab results returned.
Right knee aspiration results. WBC 27500 with 89%segs.
Culture/gram stain  many WBC's no bacteria. no growth to date.
ESR >120 CRP 35 WBC normal.

Lab results sugest clinical chronic infected right TKA.
will discuss results with Dr. Sward for definitive treatment options.
pt will need stage one revision TKA per current recommendations.

/es/ GREGORY T ARDOIN
PGY5 MD
Signed: 05/18/2009 05:43

Receipt Acknowledged By:
05/18/2009 06:28       /es/ DAVID T SWARD
                            STAFF SURGEON
===================================================================
================================ END ==============================

Current PC Provider:   BURNHAM,WILLIAM W
Current PC Team:       FIRM A
Current Pat. Status:   Outpatient
Primary Eligibility:       NSC

Order Information
To Service:         PHARMACY ERYTHROPOIETIN/DARBEPOETIN APPROVAL
From Service:       LR RENAL APN SP1
Requesting Provider:   HILDEBRAND,CYNTHIA L

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012        Printed at CENTRAL ARKANSAS HCS
429022249

# Lab Results

Evaluation for CARBON:
NON SMOKER 0-3 %
SMOKER    0-10 %

b. DB DTM RIGHT RADIAL ARTERY ON ROOM AIR
c. If a NLR outpatient, please print request to PT1793.
If a LR outpatient, please print request to PT62203.
DB MDD RIGHT RADIAL ARTERY
30% 500 AC-20 +5
READ BACK CONFIRMED TO DR. KUMAR
d. DB SM *AL
vent 50%, vt 450, rate 12, +5
e. DB OR6 Aline
f. DRAWN BY OR 6
g. AC 12/450/+5/.25-CONFIRMED WITH DR. BADAREDDI
h. If a NLR outpatient, please print request to PT1793.
If a LR outpatient, please print request to PT62203.
DB JC LEFT RADIAL ARTERY
AC/18/550/60%/PP+5
i. If a NLR outpatient, please print request to PT1793.
If a LR outpatient, please print request to PT62203.
AC/18/550/80%/+5
LEFT RADIAL ARTERY DB JC
j. If a NLR outpatient, please print request to PT1793.
If a LR outpatient, please print request to PT62203.
DB JC MN #2 RIGHT RADIAL ARTERY PT ON 15L NRB
RESULTS TAKEN TO DR. BADREDDI

---- SYNOVIAL ----

| SYNOVIAL FLUI | COLOR | TURBID | WBC | RBC | LYMPHS | PMN | AMYLASE | CRYSTA |
|---|---|---|---|---|---|---|---|---|
| Ref range low | | | 0 | <10000 | | | | NEGATIVE |
| Ref range high | | | 200 | | | | | |
| | | | #/uL | #/uL | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| a 06/19/2010 09:21 | RED/TURBID | | 164500.0 | H380000.00 | | 5 | | NEGATIVE |
| b 05/14/2009 16:26 | ORANGE/CLDY | | 27200.0 | H50000.00 | | 11 | | comment |

| SYNOVIAL FLUI | GLUCOS | PROTEI | SP.GRAV | PH |
|---|---|---|---|---|
| | | g/dL | | |

a. Aspirated from right knee.
   Aspirated from right knee.
   SAMPLE RECEIVED IN 2 EDTA TUBES
b. Aspirated from right knee.
   Aspirated from right knee.
   NO CRYSTALS OBSERVED

---

**PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)**

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS  72012
429022249

**VISTA Electronic Medical Documentation**

Printed at CENTRAL ARKANSAS HCS

# Lab Results

---- MICROBIOLOGY ----

Accession: MICRO 10 5632
Collection sample: TISSUE
Site/Specimen: FEMUR
Provider: EVANS,RICHARD P

Received: Jun 25, 2010 11:28
Collection date: Jun 25, 2010 11:28

Test(s) ordered:  GRAM STAIN
                  CULTURE

completed: Jun 25, 2010 12:40
completed: Jun 27, 2010 11:57

* BACTERIOLOGY FINAL REPORT => Jun 27, 2010   TECH CODE: 36901
GRAM STAIN:
  3+ RBC'S
  2+ WBC'S
  NO ORGANISMS SEEN
  ***GRAM STAIN
Bacteriology Remark(s):
  NO GROWTH IN 24 HOURS, FINAL REPORT TO FOLLOW.
  NO GROWTH IN 48 HOURS
  Test performed at:  CAVHS, 4300 W. 7th, LITTLE ROCK, AR 72205

---- MICROBIOLOGY ----

Accession: MICRO 10 5631
Collection sample: TISSUE
Site/Specimen: FEMUR
Provider: EVANS,RICHARD P

Received: Jun 25, 2010 11:27
Collection date: Jun 25, 2010 11:27

Test(s) ordered:  ANAEROBIC CULTURE   completed: Jun 30, 2010 12:43

* BACTERIOLOGY FINAL REPORT => Jun 30, 2010   TECH CODE: 1076
Bacteriology Remark(s):
  NO GROWTH IN 24 HOURS, FINAL REPORT TO FOLLOW.
  NO GROWTH IN 48 HOURS, FINAL REPORT TO FOLLOW
  No anaerobes isolated to date.
  NO ANAEROBES ISOLATED
  Test performed at:  CAVHS, 4300 W. 7th, LITTLE ROCK, AR 72205

---- MICROBIOLOGY ----

Accession: AFB 10 526
Collection sample: TISSUE
Site/Specimen: FEMUR
Provider: EVANS,RICHARD P

Received: Jun 25, 2010 11:27
Collection date: Jun 25, 2010 11:27

Test(s) ordered:  AFB (TB) CULTURE & SMEAR  completed: Aug 10, 2010 13:40

* MYCOBACTERIOLOGY FINAL REPORT => Aug 10, 2010   TECH CODE: 40563
Concentrate Acid Fast Stain: Negative
Mycobacteriology Remark(s):

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS   72012
429022249

**VISTA Electronic Medical Documentation**

Printed at CENTRAL ARKANSAS HCS

# Lab Results

Bacteriology Remark(s):
  NEGATIVE TO DATE
  NEGATIVE FOR GROWTH AT 5 DAYS
  Test performed at:  CAVHS, 4300 W. 7th, LITTLE ROCK, AR 72205
                        ---- MICROBIOLOGY ----
Accession: MICRO 09 4751
Collection sample: SYNOVIAL FLUID          Received: May 14, 2009 16:27
Provider: ARDOIN, GREGORY T                Collection date: May 14, 2009 16:27


    Test(s) ordered:  CULTURE
                                      completed: May 17, 2009 11:06
* BACTERIOLOGY FINAL REPORT => May 17, 2009   TECH CODE: 1077
Bacteriology Remark(s):
  NO GROWTH IN 24 HOURS, FINAL REPORT TO FOLLOW.
  NO GROWTH IN 48 HOURS, FINAL REPORT TO FOLLOW
  NO GROWTH IN 72 HOURS.
  Test performed at:  CAVHS, 4300 W. 7th, LITTLE ROCK, AR 72205
                        ---- MICROBIOLOGY ----
Accession: AFB 09 353
Collection sample: SYNOVIAL FLUID          Received: May 14, 2009 16:26
Provider: ARDOIN, GREGORY T                Collection date: May 14, 2009 16:26


    Test(s) ordered:  AFB (TB) CULTURE & SMEAR  completed: Jun 29, 2009 15:38

* MYCOBACTERIOLOGY FINAL REPORT => Jun 29, 2009   TECH CODE: 40563
Mycobacteriology Remark(s):
  NEGATIVE AFB STAIN/FLUOROCHROME METHOD
  NO GROWTH IN 6 WEEKS
  Test performed at:  CAVHS, 4300 W. 7th, LITTLE ROCK, AR 72205
                        ---- MICROBIOLOGY ----
Accession: MYCOL 09 358
Collection sample: SYNOVIAL FLUID          Received: May 14, 2009 16:26
Provider: ARDOIN, GREGORY T                Collection date: May 14, 2009 16:26


    Test(s) ordered:  MYCOLOGY (FUNGUS) CULTURE completed: Jun 09, 2009 11:51
                      MYCOLOGY (FUNGUS) SMEAR completed: May 15, 2009 13:52

* MYCOLOGY FINAL REPORT => Jun 09, 2009   TECH CODE: 107613
MYCOLOGY SMEAR/PREP:
    NEGATIVE
    ***MYCOLOGY (FUNGUS) SMEAR
Mycology Remark(s):
  ***MYCOLOGY (FUNGUS) SMEAR
  NEGATIVE TO DATE
  CULTURE NEGATIVE

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | **VISTA Electronic Medical Documentation**

MORSE, HERSHALL
1204 W KANSAS APT D 4
BEEBE, ARKANSAS   72012
129022249

Printed at CENTRAL ARKANSAS HCS